Brooks *v.* Galster.

[ONONDAGA GENERAL TERM, January 7, 1868. *Foster, Mullin* and *Morgan,* Justices.]

-----

BROOKS *vs.* GALSTER.

Where land is rented for a nursery, the tenant must remove the trees before he quits possession, on the termination of his lease, or the title will vest in the owner of the reversion.

APPEAL from a judgment entered upon the report of a referee. The plaintiff's claim was for a conversion of a quantity of nursery trees growing upon the land of the defendant. The land originally belonged to Ephraim C. Fitzgerald, and he leased ten acres to H. M. Ranny and H. M. Conkling for a nursery, from year to year. The lease appears to have been in writing, but it was not produced or proved on the trial. Conkling afterwards sold the nursery to Ranny, and afterwards the trees were sold by the sheriff on an execution against Ranny, to James Johnson, and Johnson sold them to J. Dwight Alvord. The land on which the nursery was cultivated was afterwards and on the 15th day of July, 1864, conveyed to John M. Jaycox. Jaycox let the farm to Thomas Brintnall to cultivate on shares from April 1, 1865, with the

privilege of another year, and Brintnall, in fact, accepted it for two years, up to April 1, 1867.

In the mean time the nursery grounds had dwindled down from ten acres to two acres of ground, and with the consent of Jacox, Brintnall rented the two acres to Alvord for the sum of thirty-five dollars, no particular time being fixed when the lease should expire. Alvord took up a large number of the trees, some in the spring of 1866. In the latter part of April, 1866, Alvord sold the remaining trees to the plaintiff. An arrangement was then made between Brintnall and Brooks, by which Brooks was to have until a certain time to remove the trees, and Brooks paid him, or agreed to pay him, for the use of the two acres in the mean time. Brintnall testified that he only gave him until the first of April, 1867, while Brooks claimed that he was to have until the season expired for nursery trees, and the referee finds that the season for removing trees did not expire until about May 1.

Jaycox conveyed the land on which the nursery was situated to the defendant September 18th, 1866, and agreed to yield up the possession on the first day of April, 1867, at which time the defendant actually took possession of the premises.

It does not appear that the defendant knew what claim, if any, the plaintiff had upon the nursery, when he purchased the premises of Jaycox. A few days after the first of April, 1867, the plaintiff went to the defendant, and claimed and asked for the trees. The evidence is contradictory as to what took place at the time. Brooks testified that the defendant told him that he did not know any thing about it; that he had bought the farm without any restriction, and that the trees belonged to him. The defendant testified that he told the plaintiff if he owned the trees to take them away; but if he took them, he must take them clean out; that the plaintiff replied that if he could pick them out he would take them, and that he

(defendant) declined to let him pick them out. After-wards, and on the 25th of April, 1867, this suit was commenced.

The referee found as matter of fact, that Brintnall's contract expired April 1, 1867. And he refused to find that the plaintiff rented the nursery grounds of Jaycox or Brintnall for another season for nursery purposes. And among other things, he found as matter of law that the defendant on taking possession of the land, on the first of April, 1867, became the absolute owner of the trees in question, and that the refusal of the defendant to allow the plaintiff to remove the trees unless he would clear the ground of them was not a conversion of said trees. To these conclusions of fact and law the plaintiff in due time excepted.

*J. Garfield*, for the appellant.

*J. C. Hunt*, for the respondent.

*By the Court*, MORGAN, J. The case contains numerous propositions of law and fact, which are not deemed material in the consideration of the only question involved in this appeal. It is unnecessary to concur with the referee in all his conclusions, for if he is right as to the contract or letting between Brintnall and the plaintiff, there is no ground upon which the plaintiff can claim the property after the first day of April, 1867, as against the defendant.

Passing over all the leases down to the letting made by Brintnall in 1865, and conceding that by the terms of that contract the plaintiff was entitled to the first of May, 1867, to remove the trees, still it does not appear that Brintnall renewed the lease beyond the first day of April, 1867. Brintnall swore that he did not agree to give Brooks a longer term than he had, and that he told the plaintiff he had no right to let it beyond April, 1867. Now, while the

Brooks *v.* Galster.

plaintiff gave some evidence tending to show that he hired it for another season, and while it may be conceded that the season proper for digging up and removing trees does not expire until the first of May, still it was competent for Brintnall to limit the time to the first of April, 1867, even if we concede that he had authority from Jaycox to extend the time beyond that, which does not appear.

Under the most favorable construction of the evidence, the owners of the trees had only a tenancy from year to year, when Jaycox took a conveyance of the premises. If there had been no new agreement as to the time when the tenancy should expire, it might be considered as extending from May of one year to May of the next year, during the season for digging up and removing nursery trees. But there was an agreement for a renewal, which, as I understand the case expired April 1, instead of May 1867. Brintnall's lease expired on March 31st, 1867, and he did not assume to have any right or authority to extend the plaintiff's term beyond his own. Clearly, therefore, the plaintiff's tenancy, as to the two acres, expired with Brintnall's term.

As to the right of the plaintiff to dig up and remove trees after that time, against the permission of the owner of the land, there can hardly be two opinions. These trees were fixtures, growing in the soil of the defendant, and the general rule undoubtedly is, that the tenant must remove them before he quits possession on the termination of his lease. (2 *Kent*, 346.) When the tenancy is at will or sufferance, the tenant is entitled to a reasonable time after its expiration. (1 *Hilliard on Real Property*, 68.) And when the tenant quits possession without removing a fixture, he is understood to make a dereliction of it to the landlord. (*Id. Hill on the Law of Fixtures*, § 31.) In *Lee* v. *Risden*, (7 *Taunt*. 188,) it was held that if the tenant do not exert his privilege and sever the fixtures before the expiration of his right upon the land, he cannot afterwards,

because the right of the fixtures vests in the landlord at the same time as the right of the possession of the land. (*Hill on Fixtures*, § 45.) And although the landlord afterwards severs them, such severance does not revive the right of the tenant to the property. (*Taylor's Land. and Tenant*, § 553.) And the same doctrine is held in *King* v. *Wilcomb*, (7 *Barb.* 263.)

Cases are cited by the plaintiff's counsel to show that one man may own the land, and another the trees growing upon it; and that as between the landlord and tenant, fixtures erected by the tenant may be treated as personal property, although as between vendor and vendee they would be regarded as real estate. But this view of the law does not remove the main obstacle to the plaintiff's recovery. It does not determine that the tenant may treat such fixture as personal property, after his tenancy has expired. If the article were not a fixture, doubtless the tenant might take it away any time after his tenancy had expired; although he would be a transgressor for entering upon the premises without the consent of the landlord, in order to take it away. But when the property claimed is attached to the soil, so that it is to be regarded as a fixture, the rule seems to be well settled, that if the tenant neglects to take it away with him at the expiration of his term, or such further time as may be agreed upon for that purpose, the title to it vests absolutely in the owner of the reversion.

If I am right in this view of the law, the referee was right in his final conclusion, although he may have erred in the decision of some other questions not material to change the result.

I think the judgment should be affirmed.

Judgment affirmed.

[ONONDAGA GENERAL TERM, January 7, 1868. *Foster*, *Mullin* and *Morgan*, Justices.]