### VAN VLECK v. WHITE.

(Supreme Court, Appellate Division, Second Department.   November 15, 1901.)

1. TRADE FIXTURES—LANDLORD AND TENANT—RIGHT THERETO—EVIDENCE. .
> Where a lease provided that at or before the termination of the lease the lessee might remove any buildings he might have erected thereon, if the covenants and agreements were fully performed, and summary proceedings were commenced against the lessee on his failure to pay rent, the agreement for the use of the premises and the relation of landlord and tenant were canceled and annulled, under Code Civ. Proc. § 2253, prescribing that the issuing of a warrant for the removal of a tenant can-

cels the agreement, and annuls the relation of landlord and tenant; and the lessee will not be entitled to thereafter remove, as trade fixtures, a boiler and engine placed on the premises by him.

2. SAME.

A lease provided that at or before the end of the term the lessee might remove any buildings he might have erected on the premises. The lessee placed a boiler and engine on the premises, and thereafter became a bankrupt; and plaintiff, who was appointed trustee of his estate, took a new lease of the premises, with all the fixtures thereon, without any reservation of the right to remove the same. *Held,* that plaintiff's right to remove the fixtures was abandoned by the taking of the new lease, and that the title thereto was in the lessor.

3. SAME—ESTOPPEL.

Where a trustee in bankruptcy took a new lease of certain premises, with the fixtures thereon, which premises had been formerly leased by his bankrupt, who had placed certain trade fixtures thereon, the plaintiff will be estopped from claiming title to such fixtures.

Action by Frederick B. Van Vleck, as trustee of the estate of Joseph L. Queensbury, a bankrupt, against Alexander M. White. Submitted on an agreed statement of facts. Judgment in favor of defendant directed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

L. Victor Fleckles, for plaintiff.

R. Burnham Moffat, for defendant

SEWELL, J. The question to be determined in this case is whether the plaintiff or the defendant is the owner of the boiler and engine referred to in the statement of facts submitted. The defendant is, and for many years has been, the owner of certain premises situate on Twenty-Fourth street, near Third avenue, in the borough of Brooklyn. The defendant leased the premises to George E. Lanigan for the term of four years and three months from the 1st day of February, 1895, with the privilege to Lanigan, at or before the termination of the lease, to remove from the premises any building or buildings he might have erected thereon. Prior to the expiration of the lease, Lanigan sold to Joseph Queensbury a wooden building which he had erected upon and made fast to the premises, and used as a planing and molding mill. On the same day Queensbury leased the premises of the defendant for the term of three years from May 1, 1899, agreeing to pay a yearly rent of $350, and all taxes and water rates as they became due. It was also provided in the lease that the premises were to be used by the lessee only for the ordinary business of a builder and of a planing and molding mill, or other business of a like nature, and that up to the termination of the lease the lessee might remove any building or buildings which he might have erected or found upon the premises, but that if the covenants, condition, and agreements binding upon him were not fully performed, then said building or buildings should remain and become a part of the estate of the lessor. The lessee also agreed not to assign the lease or let the premises without the consent of the lessor. Queensbury entered into possession of the premises under his lease on the 1st day of

May, 1899, and some time prior to January 1st, 1899, affixed to the premises the boiler and engine in question, for the purpose of furnishing power to turn the machinery installed and used by him in the planing and molding mill. Queensbury continued in the occupancy of the premises and paid the rent to August 1, 1900, when he defaulted, and has ever since failed to pay the rent, taxes, or water rates, or to perform any of the other conditions of the lease. On October 18th the defendant commenced summary proceedings against Queensbury, and such proceedings were thereupon had therein that a final order was made on the 23d of October awarding to the defendant the delivery of the possession of the property for the nonpayment of the rent due, and directing the removal of the tenant from the premises. The warrant was issued and delivered to the city marshal October 30, 1900. On the following day an order was made adjudging Queensbury a bankrupt. The plaintiff was appointed trustee of the estate of the bankrupt, and on the 29th of December the plaintiff, as such trustee, obtained an order from a judge of the district court of the United States authorizing him to enter into a written agreement with the defendant for the hiring of the premises for the term of six months from November 1, 1900, at the agreed rent of $256.70. Thereafter, and on the 4th day of January, 1901, the plaintiff entered into a written lease with the defendant whereby the defendant leased to the plaintiff, "not individually, but as trustee of the estate of Joseph L. Queensbury, bankrupt," and the plaintiff hired from the defendant, the premises, "together with the buildings thereon and the appurtenances, for the term of six months from the first day of November, 1900, at the fixed rental of $256.70." The plaintiff agreed in the lease "to pay the rent therein specified, and at the expiration of the term to quit and surrender the premises in as good condition as reasonable use and wear thereof would permit, damages by the elements excepted, and that he would not use the premises, or permit the same to be occupied or used, for any purpose other than that of a planing and molding mill, or other business of that nature." The plaintiff continued in possession of the premises until the expiration of the lease, on May 1, 1901, when he surrendered possession to the defendant. It further appears by the agreed statement of facts that during the term "the plaintiff, as such trustee, sold and caused the removal of all the property then on said bankrupt's estate, but did not sell or cause the removal of said boilers and engines, although making due claim against the defendant that the same were trade fixtures, and that title thereto was fully vested in him, as a part of the estate of said bankrupt." It also appears that the "boiler and engine have not been removed, or their positions on said premises in any way disturbed, since they were affixed thereto by said Queensbury prior to his default in the payment of the rent on August 1, 1900."

It is not to be denied that, as between landlord and tenant, the placing of machinery or other fixtures by the tenant upon leased premises for the purpose of trade or manufacture to be carried on by the tenant does not make the property so affixed a part of the

freehold, but it still remains personalty, so far as the right of removal is concerned. Bank v. Shinn, 18 App. Div. 276, 46 N. Y. Supp. 329, affirmed in 163 N. Y. 360, 57 N. E. 611. The right of a tenant to remove trade fixtures is conceded to him, for reasons of public policy; and, being in the nature of a privilege, it must be exercised before the expiration of the term, or before he quits possession. He cannot afterward, because the right of the fixture vests in the landlord at the same time as the right of possession of the landlord. Mandeville v. Guernsey, 51 Barb. 99; Talbot v. Cruger, 151 N. Y. 117, 45 N. E. 364. I think that the issuing of the warrant for the removal of the tenant from the premises canceled the agreement for the use of the premises, and annulled the relation of landlord and tenant. Code Civ. Proc. § 2253. If, however, we assume that the unexercised right of removal extended to the plaintiff when he was appointed trustee of the tenant's estate, and that he then stood in the same situation as the tenant, it cannot be doubted that the taking of a new lease of the premises, with the boiler and engine affixed thereto, without any reservation of a right to remove them, was a waiver of the privilege. In Talbot v. Cruger, supra, Judge Gray, speaking of the effect of a new lease, said:

"A tenant may remain in possession after the old lease has expired, but, unless he reserves the right under the new lease to remove the fixtures upon the land, the right will be deemed to have been abandoned, and they will become the property of the landlord."

In Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173, the court said:

"If a tenant, having the right to remove fixtures erected by him on the demised premises, accepts a new lease of such premises, including the building, without reservation or mention of any claim to the buildings, and enters on a new term thereunder, the right of removal is lost, notwithstanding his actual possession has been continuous. * * * Elementary writers are very well agreed that, when a tenant continues in possession under a new lease or agreement, his right to remove fixtures is determined, and he is in the same situation as if the landlord, being seised of the land with the fixtures, had demised both to him."

It may also be observed that the new lease carried with it the buildings and all the fixtures on the premises; that it was an acknowledgment of the title of the defendant in both, and estopped the plaintiff from controverting it.

I am therefore of the opinion that the defendant is the owner of the boiler and engine in question, and that judgment to that effect should be directed, with costs to the defendant.