(70 App. Div. 114.)

### BERNHEIMER et al. v. ADAMS.

(Supreme Court, Appellate Division, First Department.   March 7, 1902.)

1. TRADE FIXTURES—PURCHASER OF REAL ESTATE—RIGHT TO FIXTURES.
   Where trade fixtures are sold to a tenant, attached to the leased premises, and a chattel mortgage taken on the fixtures for the purchase price, all as parts of one transaction, a mortgage foreclosure purchaser of the realty acquires no title to the fixtures.

2. SAME—RIGHT OF REMOVAL.
   A lessee, on the termination of his lease by foreclosure of a mortgage on the premises, has a reasonable time in which to remove trade fixtures which he has placed thereon.

3. SAME—ACTION—ISSUES.
   Where a landlord does not claim title to trade fixtures placed on the property by a tenant and mortgaged by the latter, for the failure to remove such fixtures within a reasonable time after the expiration of the lease, but claims them on other grounds, the chattel mortgagee, in an action to recover the fixtures, is not required to prove facts estopping the owner from raising such objection.

4. SAME—ESTOPPEL—APPEAL.
   Where a landlord does not object to the removal by the mortgagee of the tenant of trade fixtures installed by the latter, on the ground that they became part of the realty by reason of the act of the tenant in accepting a lease of the property without reserving the right to remove the fixtures, but objects to the removal on other grounds, he will be estopped from first urging such objection on appeal from a judgment in replevin against him, and in favor of the mortgagee.

5. SAME—EVIDENCE—SUFFICIENCY.
   Evidence examined, and *held* to show that the removal of trade fixtures attached to realty by a tenant, but not distinctively a part thereof, would not so damage the property as to preclude removal by the tenant.

6. SAME—LANDLORD AND TENANT—RIGHT TO REMOVE FIXTURES.
   A tenant leased a saloon, and purchased at a foreclosure thereof under chattel mortgage, trade fixtures which had been installed by a former tenant, and gave a chattel mortgage on the fixtures to secure the purchase price.   The fixtures were capable of being removed without serious injury to the property.   *Held*, that the lease of the premises, without reserving the right to remove the fixtures, did not defeat the tenant's right so to do, the doctrine that the taking of a lease without reserving the right to remove fixtures constitutes an abandonment of the right being limited to fixtures which are distinctively a part of the realty.

7. TRIAL—DIRECTED VERDICT—DETERMINATION BY COURT.
   Where both parties to a law action ask a directed verdict, and after the court announced its decision, but before the verdict is entered, one party asked to go the jury on one issue, the court may determine all other issues, and, if the issue on which a trial is asked can be determined as a matter of law, it is not error for the court to determine the entire case.

   Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Replevin by Simon E. Bernheimer and another against Albert J. Adams to recover trade fixtures. From a judgment in favor of the plaintiffs, the defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

William H. Newman, for appellant.

Gibson Putzel, for respondents.

LAUGHLIN, J. This is a replevin action to recover a storm house, an iron awning, two urinals, two water-closets, and 20 feet of oak partition, which were erected upon or attached to the building known as "No 549 Hudson Street," in the city of New York, by lessees of the premises. The plaintiffs in their complaint base their claim of title on a chattel mortgage executed to them by Anna Mahoney on the 10th day of September, 1897, to secure her promissory note. The defendant in his answer bases his claim of title upon a deed of the premises executed to him on the 19th day of December, 1895, pursuant to a judgment of foreclosure, prior to which time these chattels had been attached to the freehold. At the same time that the chattel mortgage was executed, or prior thereto, but on the same day, the defendant executed a lease of the premises to the plaintiffs' mortgagor for the term of 3 years, 7 months, and 15 days from the 15th day of September, 1897. This lease makes no reservation of any existing right on the part of the tenant to remove these alleged trade fixtures. The chattel mortgage also covered the lease. On the 2d day of March, 1893, William H. Ramsey, who then owned the premises, leased the same to Lee & Block for saloon purposes for the term of five years from May 1, 1893. This lease was recorded March 3, 1893. The plaintiffs thereafter, and during the same year, sold and delivered to said Lee & Block and installed all the chattels in question, except the iron awning, and pursuant to the contract of sale took back a chattel mortgage thereon, and on other property, including the lease, to secure the purchase price of this and the other property. That chattel mortgage was both filed and recorded on the 30th day of March, 1893. There were several transfers of the saloon business and the fixtures, subject to said chattel mortgage, which was assumed by the respective transferees. In June, 1896, after the defendant acquired title to the premises, the firm of Mahoney & O'Neill became the owners of the saloon business and fixtures, subject to said mortgage, which they likewise assumed. It was not shown whether or not the first lease was cut off by the foreclosure under which the defendant obtained title, but it appears that shortly thereafter the defendant leased the premises to said last-mentioned firm, and upon its dissolution Mahoney succeeded to the rights of the firm, and obtained another lease from the defendant for the term of five years from May 1, 1898. Whether he made any reservation of his rights to the property in this lease or otherwise does not appear, but no claim was made upon the trial or is urged here that

if the rights of the mortgagees survived the purchase by the defendant they were cut off by this lease. Mahoney subsequently erected the awning with moneys advanced by the plaintiffs, and thereupon, on the 16th day of May, he executed to them a new chattel mortgage covering the property in question, and more, and also the lease, to secure the original and this last indebtedness. The plaintiffs foreclosed this chattel mortgage, and said Mahoney's wife, Anna Mahoney, purchased the property on the foreclosure sale on the 10th day of September, 1897, and thereupon, apparently to secure the entire purchase price, executed the chattel mortgage upon which the complaint is based. It appears that, at about the time of said purchase of the property by Anna Mahoney, her husband was dispossessed by defendant for the nonpayment of rent. Mahoney's testimony with reference to the lapse of time between his being dispossessed and his wife's obtaining possession is conflicting. He says that she immediately followed him in possession, and also that the place was closed for a time. In December, 1897, the plaintiffs foreclosed the mortgage last referred to and bought in the property themselves. It does not appear definitely, but the presumption is that Anna Mahoney as lessee was then in possession, for her term as lessee had not expired. The plaintiffs then proceeded to remove the mortgaged property, which, in addition to the property in question, consisted of a bar and other saloon fixtures. The defendant was present, and did not question their right to remove any of the property which he thought could be removed without material injury to the building. He appears to have asserted no claim of title upon any other ground than by virtue of his deed, and because, in his opinion, the articles in question could not be removed without serious injury to the freehold. He accordingly permitted the removal of the bar, which was attached to the wall by screws, and upon its removal the wall was left discolored. Furthermore, he at that time purchased some of the gas fixtures of the plaintiffs, thus clearly recognizing their title.

The case seems to have been tried without much regard to the pleadings, and the plaintiffs were permitted to trace their title without objection on that ground. But the record does not disclose that the defendant made any claim of title other than by virtue of his deed. It appears, however, that at the close of the evidence, in answering the motion made by plaintiffs' counsel for the direction of a verdict, the defendant's counsel asserted that under the general rule, if the tenant accepted a new lease without removing the fixtures or reserving the right to do so, the right is lost, and the fixtures become a part of the realty; but he made his motion for a dismissal of the complaint solely upon the ground that the fixtures were attached at the time of the defendant's purchase.

The articles in question were attached to the premises as trade fixtures. They constituted part of the saloon fixtures, essential to properly equip the leased premises for the accommodation of the patrons of the lessee. It does not appear whether the mortgage was executed before they were attached; but the fair inference is that their sale, annexation to the freehold, and the mortgage con-

stituted one transaction. In these circumstances, the law presumes that the parties intended that the chattels should remain personal property. Mills Co. v. Quinn, 76 N. Y. 23, 26, 32 Am. Rep. 259; Insurance Co. v. Allison, 46 C. C. A. 229, 107 Fed. 179; Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Improvement Co. v. Cosgrove, 47 App. Div. 35, 62 N. Y. Supp. 372. The plaintiffs, therefore, as mortgagees held title at the time of the purchase of the property by the defendant. He has no prior equities over these owners, and he took subject to their rights. Sisson v. Hibbard, 75 N. Y. 542; Mills Co. v. Quinn, supra.

When the defendant obtained title to the premises, the lease under which the plaintiffs held their mortgage had not expired, unless it was terminated by the decree in foreclosure. Even if it were so terminated, the rights of the mortgagees survived, at least for a reasonable time, to enable them to remove their property. Discount Co. v. Drake, 6 C. B. (N. S.) 798; Saint v. Pilley, L. R. 10 Exch. 137; Updegraff v. Lesem (Colo. App.) 62 Pac. 342; Royce v. Latshaw, Id. 627; Alberson v. Mining Co. (Or.) 65 Pac. 978; 1 McAdam, Landl. & Ten. (3d Ed.) 716; Lewis v. Pier Co., 125 N. Y. 341, 26 N. E. 301. It thus appears that the only claim of title asserted by the defendant in his answer and upon the trial cannot be sustained.

Whether facts existed which excuse the plaintiffs from removing the fixtures within such reasonable time does not definitely appear; but this might be inferred from the defendant's subsequently allowing the removal of most of the property covered by the mortgage and purchasing part without asserting any other claim of title. Moreover, the defendant having made no claim of title on account of the plaintiffs' failure in this regard, they were not called upon to prove facts constituting a waiver or estoppel on the part of the defendant.

The appellant now contends that, by accepting the new lease without removing this property or reserving the right so to do, Anna Mahoney and these plaintiffs, her mortgagees, forever lost the right to remove the same. We think it may safely be stated that the rule of law invoked is one not well understood by landlords and tenants, and that new leases are generally drawn without reserving such rights. The law does not favor forfeitures. In such cases it lays hold of slight evidence to work a waiver or estoppel. Landon v. Board, 24 Hun, 75; Duffus v. Bangs, 122 N. Y. 423, 25 N. E. 980; Young v. Implement Co. (Utah) 65 Pac. 720; Thorn v. Sutherland, 123 N. Y. 236, 25 N. E. 362. We think it may be fairly and justly held that the defendant, by his conduct in not asserting this claim at the time of the attempted removal, but, on the contrary, merely contending that the plaintiffs had no right to remove the articles because their removal would injure the freehold, has led the plaintiffs to employ counsel and bring this action for the purpose of establishing that his contention in this regard was not well founded; and by not invoking the rule in question in his answer he has permitted them to proceed to final judgment, and should be estopped from now claiming a forfeiture. Goodwin

v. Insurance Co., 73 N. Y. 480; Prentice v. Insurance Co., 77 N. Y. 483, 33 Am. Rep. 651; Brink v. Insurance Co., 80 N. Y. 108.

If, however, notwithstanding these facts and the condition of the record, the defendant still be in a position to assert this claim, we think his contention cannot be sustained. The property in question consisted of ordinary trade fixtures, as distinguished from fixtures which are distinctively realty. The oak partition was only seven feet high, secured to the wall by iron holdfasts three and a half inches long, to which it was screwed, and it was nailed to the floor. It was placed in a room for the purpose of shutting off and dividing the water-closets. The storm house was attached in the same manner. The urinals were attached to the building by the marble slabs forming the back, being screwed into wooden studding, 3x4, which was nailed to the wall. The water-closets were screwed to the marble floor, and the seats were screwed to the wall in the same manner as the urinals. The hoppers rested on the marble slabs, and were screwed to the wall. The awning was thin corrugated iron, 5 or 6 feet in width, extending about 75 feet along the side and end of the building outside, and it was fastened to ribs or a frame riveted to heavy holdfasts driven into the wall at intervals of about 6 feet. It could be removed by taking out the rivets, and leaving the holdfasts in the wall, which was customary. These holdfasts, if removed, would leave a hole in the wall at the surface not over one by one and a half inches. The defendant's evidence further showed that tin was nailed to the wall above the roof of the storm house, to prevent water running down; that the awning was screwed to a wooden bar fastened to the wall, with tin nailed over that, the same as over the storm house. One witness testified that, if the holdfasts were removed from the walls, new bricks would have to be put in to make the wall the same as it was before; but he says only a quarter of an inch of the bricks was broken off. The same witness testified that the floors and wall would be mutilated by removal of the water-closets and urinals, and that the partition was nailed to the wall, and some of the plaster would be destroyed in removing it. But by mutilating he said he meant a mark would be left in the wall, and some of the plaster would be broken. Another witness testified that part of the flooring had been taken off to put down the floor slabs of the urinals, and that part of the flooring had been cut away to insert the waste pipes and drips, and that after the urinals were taken out there would be a big hole in the floor, and that the wall where the studding was fastened would be injured. It thus appears that the chattels may be removed without injury to themselves, and without any great injury to the inheritance. Manifestly, these defects could be repaired at slight expense. In these circumstances, we are of opinion that the injuries to the building incident to the removal of these chattels would not constitute a material, substantial, or serious injury to the freehold, within the meaning of those terms as employed in the rule declaratory of the law relating to the right of removal of trade fixtures by a tenant. Tifft v. Horton, supra; Murdock v. Gifford, 18 N. Y. 28; Ford v. Cobb, 20 N. Y. 344; Sisson v. Hib-

98     75 NEW YORK SUPPLEMENT   (Sup. Ct.

and 109 New York State Reporter

bard, 75 N. Y. 542; Holmes v. Tremper, 20 Johns. 29, 11 Am. Dec. 238.

When Anna Mahoney became a purchaser of these chattels on the foreclosure of the former chattel mortgage, she had the right to remove them; but it is claimed that she lost this right by not severing them, or reserving it in her lease from the defendant. Why should she forthwith make her new landlord a present of some $3,000 worth of trade fixtures? While it was competent for her to do so, it is evident that she had no such intention; for, concurrently with the defendant's execution of the lease to her, she executed the chattel mortgage to the plaintiffs. The taking of a new lease does not necessarily conclusively presume the surrender of a former lease, and the transfer of ownership of fixtures to the landlord. The presumption may be rebutted by circumstances showing that it would be unreasonable to infer that the defendant so intended. Van Rensselaer's Heirs v. Penniman, 6 Wend. 569; Witmark v. Railroad Co., 76 Hun, 302, 27 N. Y. Supp. 777; Second Nat. Bank v. E. O. Merrill Co., 69 Wis. 501, 515, 34 N. W. 514; Abell v. Williams, 3 Daly, 17. In this case Mrs. Mahoney was not the former tenant. The plaintiffs, as has been seen, had the right, under their former mortgage, to remove this property, and that right would survive, for a reasonable time at least, the eviction of the tenant. Mrs. Mahoney succeeded to the same right, and it passed to the plaintiffs by her mortgage. If she purchased concurrently with or after receiving a lease from defendant, the acceptance of the lease would not constitute an abandonment of her right to the chattels. The evidence shows that she purchased the property, gave the mortgage, and received the lease on the same day. Whether one of these events preceded the other does not appear. If we are to indulge in any presumption on that point, it should be one consistent with her retaining ownership, rather than forfeiting her rights. Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547. It was not disputed that these chattels were attached as trade fixtures, and that it was intended that they should retain their character as personal property. Nor were they of such a character or so affixed as to become necessarily a part of the freehold, and distinctively realty, and, as has been seen, they can be removed without material injury to the building. We think no rule of law or public policy requires in these circumstances that the tenants or mortgagees should lose their rights by a failure to specify in the lease that the right of removal was reserved, and such a doctrine would be most inequitable.

We deem the true rule on this subject to be that, if fixtures are distinctively realty, the right to be removed must be reserved in the lease. The right to remove fixtures which are distinctively realty is in the nature of a license, and must be exercised while the tenant is in possession under the lease that grants it. Taking a new lease without reserving the right is deemed an abandonment thereof. Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173; Talbot v. Cruger, 151 N. Y. 117, 45 N. E. 364; Stephens v. Ely, 162 N. Y. 79, 56 N. E. 499; Van Vleck v. White, 66 App. Div. 14, 72 N. Y. Supp. 1026; Brooks v. Galster, 51 Barb. 196. The court of appeals has decided that the

doctrine of the Loughran Case, supra, is not to be extended, and that it will not be applied where a tenant holds over without a new lease after the expiration of a term under a lease in writing. Lewis v. Pier Co., 125 N. Y. 341, 26 N. E. 301. The Loughran Case involved the right to remove a building which was distinctively real property; and the Stephens Case, supra, involved the right to remove general plumbing, where a new lease had been taken expressly obligating the lessee to surrender the premises in as good condition as received, and providing that the tenant might make alterations, but must restore the premises to their former condition, and the court held that any parol reservation of the right of removal would be inconsistent with these terms of the lease. In the case at bar the lease is not printed, and it will not be presumed that it contained similar terms. We think the Loughran Case should further be limited, and that it should be deemed not applicable to trade fixtures, not distinctively realty, designed to retain their character as personal property, and capable of removal without material injury to the freehold. Imusch v. Kohn, 22 Misc. Rep. 344, 49 N. Y. Supp. 176; McCarthy v. Trumacher, 108 Iowa, 284, 78 N. W. 1104; Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907.

After counsel for both parties had made a motion for a direction of a verdict, and the court announced its decision, but before the verdict was taken or entered, the defendant asked to go to the jury upon the question as to whether these articles could be removed without damage to the building. This request the court refused, and the verdict was then rendered. The request was timely made, if that was a question for the jury; but by moving for a direction of a verdict, and subsequently asking that only this one question be submitted to the jury, the defendant, in effect, consented that the court should pass upon the other questions of fact in the case. Winchell v. Hicks, 18 N. Y. 558; Ormes v. Dauchy, 82 N. Y. 443, 37 Am. Rep. 583; Thompson v. Simpson, 128 N. Y. 270, 28 N. E. 627; Bank v. Weston, 161 N. Y. 520, 55 N. E. 1080, 76 Am. St. Rep. 283; Shultes v. Sickles, 147 N. Y. 704, 41 N. E. 574. We think that, as matter of law, these chattels could be removed without substantial injury to the freehold, and therefore the request was properly denied.

These views require an affirmance of the judgment, with costs.

O'BRIEN, J., concurs.   PATTERSON, J., concurs in result. McLAUGHLIN, J., dissents.

VAN BRUNT, P. J. I dissent. While the fixtures might probably be removed during the term of the tenancy, when such term expires the tenant has no right of entry to remove trade fixtures.