## THAM v. CARROLL.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

LANDLORD AND TENANT (§ 139*)—EVICTION—RE-ENTRY FOR GROWING CROPS—PAYMENT OF RENT.

A lease of a farm at a rental payable at the end of every six months, providing that the lessee might sow a certain quantity of grain to be harvested after expiration of the term, having provided that, without charge and without liability of any one to the tenant for damages, C., who was operating a quarry on part of the farm, might use such parts of the farm as he might require for carrying on the quarrying, for any purpose or use necessary or incidental to the business, the making of improvements by C., incidental and essential to the improvements of the quarry, though rendering untenantable 30 or more acres of the farm, not only did not constitute an eviction of the lessee, who, after such improvements were made, paid rent for six months, and then, at the end of the next six months, left without paying the rent therefor, claiming only a right to reduction of rent, which was not conceded; but, even if they did amount to an eviction, they did not entitle him to re-enter and take away the growing grain without paying the rent which accrued while he was in possession and before he left.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 492–507; Dec. Dig. § 139.*]

Kruse, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Martha Tham against Samuel S. Carroll. From a judgment of nonsuit, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles Oishei, for appellant.
George Clinton, Jr., for respondent.

SPRING, J. The plaintiff, the assignee of Anton Tham, the tenant of the defendant's farm in the town of Clarence, Erie county, has brought this action to recover damages for the conversion of a quantity of wheat and rye. Tham leased the farm of the defendant and entered into possession April 1, 1906, at a rental of $450 per year, payable semiannually at the end of each six months.

At the time the lease was made, Carroll Bros. were operating a quarry, as the lessee knew, on a part of the leased premises; and its further development would inevitably interfere to some extent with the tilling of the farm, and that condition was provided for by covenants in the lease as follows:

"The lessee further covenants and agrees with the lessor that the firm of Carroll Brothers, their heirs and assigns, may have the free use of such portions of the farm as they may from time to time require for the purpose of carrying on their business of stone quarrying, stripping earth from stone to be quarried, piling earth that has been stripped from the land to be used for quarrying and for any other purpose or use which may be necessary or incidental to their business. The said Carroll Brothers may have the free use of any space now occupied or to be occupied by railroad tracks now or which may hereafter be laid and of any or all such space for the buildings now or which may hereafter be erected, moved or placed thereon, for the

carrying on of their business or for the accommodation of their employés. The lessee further covenants and expressly agrees that in no event shall the said firm of Carroll Brothers or either of them individually, their executors, administrators or assigns, be held liable to the lessee for any damage to crops, animals, machinery or persons by reason of blasting or by or on account of any damage caused by any machinery, engine, boiler or apparatus used in their business or for or on account of any act or omission of their agents, servants or employés causing damage to the lessee."

In 1906 Carroll Bros. constructed a railroad track over a part of these premises, and another in the early part of 1907, piled dirt on some of the land, and made a driveway to the quarry. All these improvements were incidental and essential to the development of the quarry. Quite a tract of land, probably 30 acres or more, was rendered untenantable by these developments in connection with the excavation of the stone, and the plaintiff claims these acts were tantamount to an eviction of the leased premises.

We think the position untenable in view of the circumstances which appear in the record.

Three semiannual payments of the rent were made by the lessee in accordance with the agreement; the last October 1, 1907. The railroad tracks were then laid, the land flooded, and substantially all the acts committed which are now urged to sustain the claim of eviction. The lessee continued in possession of the premises in pursuance of the contract until April 1, 1908, when he abandoned them and without paying any part of the six months' rent then maturing. He complained to the defendant of the appropriation of the land and asked for a reduction in the rent of $50 a year, and quit before the negotiations were concluded on this subject.

When the lessee went into possession of the farm, there was a quantity of wheat growing thereon sowed by the preceding tenant and which he removed. By the terms of the lease the lessee was permitted to sow a like quantity of wheat to be harvested after the expiration of the term. The lessee sowed the wheat and rye and harvested the same in the summer of 1908, leaving the grain in the shock in the field, which he later attempted to thresh; but the defendant would not permit this until the rent accrued was paid. The defendant afterwards caused the grain to be stored in the barn on the premises. It is for the alleged conversion of this grain that the present action was commenced.

The only significance of the charge that the plaintiff's assignor was evicted from the leasehold property is to afford an excuse for reentering the premises and threshing and removing the grain without paying the rent. The lease may be somewhat harsh to the lessee in its provisions in allowing Carroll Bros. to appropriate land in the carrying on of the quarry without any redress by the lessee for damage to his crops. We can only construe the agreement as it is, which he seems to have entered into advisedly. All the substantial acts proven are within the explicit terms of the lease, and there is no proof that any of them were committed wantonly or for any other purpose than the carrying on of the business of stone quarrying. The lease is also definite and precise in exonerating the defendant and Carroll Bros. for any of these acts whether committed by themselves or their agents.

The lessee voluntarily surrendered the premises, failing to pay the rent, and thereby lost his right to the away-going crop. Gregg v. Boyd, 69 Hun, 588, 23 N. Y. Supp. 918.

His right to that crop depended upon his performance of the agreement. He could not abandon the premises, terminate the lease, refuse to pay the accrued rent, and still be entitled to the grain. The objection that the defendant made to the removal of the grain was that the rent must first be paid. If the lessee's title survived the abandonment of the premises, it surely was not enforceable when he or his assignee declined to pay the rent for the time he actually occupied the farm.

Even if he was justified in abandoning the premises and terminating the tenancy, he was not absolved from paying the semiannual installment which accrued before he left the farm for good. He could not re-enter and take away the growing grain until he had paid what was actually due. Even if the acts committed by Carroll Bros. were equivalent to an eviction, they did not relieve him from liability for rent accruing while he was in possession of the premises in pursuance of the lease. Failure to pay any installment of the rent when due by the provisions of the lease determined the term and avoided the contract.

The lessee remained in possession of the premises for a long period after the alleged invasion of the leasehold property. The rent was paid in October, 1907, which was subsequent to the important acts complained of. It is a serious question whether the payment of this rent money and the retention of the premises did not amount to a confirmation of the tenancy in spite of the acts of Carroll Bros. The right to abandon must be exercised promptly. Seaboard Realty Co. v. Fuller, 33 Misc. Rep. 109, 67 N. Y. Supp. 146; Kent v. Ward, 111 N. Y. Supp. 743; Heilborn v. Aaronson, 116 N. Y. Supp. 1096.

Before the lessee abandoned the premises, he did not contend that Carroll Bros. in any way overstepped the provisions of the lease. The complaint was that the rent was too high, not that the taking of the land for the operation of the quarry was in violation of the lease or a transgression of his rights. Apparently that suggestion was of later origin and in order to aid him, or his assignees, in getting the value of the grain without paying the rent already due.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except KRUSE, J., who dissents in an opinion.

KRUSE, J. (dissenting). The question is over the ownership of 32 acres of wheat and five acres of rye. The action is in conversion, and the trial court directed a nonsuit. The plaintiff appeals.

The plaintiff's assignor leased of defendant the farm upon which the grain was grown, but left it before the expiration of his lease and before the grain was matured and cut, and without paying the last half year's rent. After the lessee had left the farm, the defendant lessor permitted him or his assignee to cut the grain and shock it, and thresh a part of it, but prevented him from threshing the remainder

and took all the grain, claiming to own the same. The question is whether the lessee, by leaving the farm and not paying his rent, lost his crop of grain.

The farm consisted of 314 acres, but only 145 acres was workable land. When the lessee moved onto the farm, the lessee testified that there was a little quarry on the farm and but one track; that thereafter the defendant made a second track, taking 15 acres out of the middle of the farm; that he used 10 acres for piling up refuse material; that he made a driveway 40 rods long and 5 feet wide, and besides another driveway, 20 rods long and 5 feet wide; that he built 5 houses for the use of the employés in the quarry, and a barn; that the employés brought with them a horse and about 50 chickens; that the chickens ate up his corn and crops and the horse fed upon 2 acres of meadow; that defendant pumped water from the quarry and flooded the pastures, 13 acres, and spoiled it; that the workmen ran over his field, taking most of his meadow; that there was a stone fence, and the defendant took about 6 or 7 feet from each side (as he says) of the fence for use in the house, letting the cattle run over the meadows. Other depredations were committed, but enough has been said to show the nature and extent of the lessee's deprivation of the use and enjoyment of the premises.

The lessee protested to the defendant against these acts, or some of them; but the protest was unheeded. The lessee says that there was unimproved land that could have been used for dumping the refuse, and that if the ditch had been made larger the meadow would not have been spoiled; and claims it was unnecessary to make footpaths, roads, and a railroad through the middle of the farm; that it could have been done on the edge or over a part which would have been less disadvantageous in carrying on the farm and would reasonably answer the purpose of carrying on the quarrying operations.

While the lease permitted Carroll Bros. to use such portion of the farm as might from time to time be required for the purpose of carrying on the business of stone quarrying, and in substance exempted them collectively or individually from damage in blasting operations or from acts of their agents, servants, or employés, that I think did not justify the defendant in doing or causing to be done more than was reasonably necessary to operate the quarry, and only such part of the premises could be used as was actually necessary for that purpose. Whether the defendant overstepped the bounds of such necessity, and deprived the lessee of more land and interfered with its use by the lessee to a greater extent than he was entitled to under this provision, was at least I think a question of fact. It does not clearly appear what the precise relation of defendant to Carroll Bros. was; but the evidence tends to show that he was in charge of the quarry operations and had control of the workmen, and the lessee testified that the specific acts appropriating different portions of the farm, to which I have called attention, were done by him.

The lessee remained in possession of the premises for two years— April, 1906, to April, 1908. In January, 1908, he asked the defendant to reduce the rent $50, saying that he had taken so much land that

he (lessee) could not make the rent. The defendant did not give the lessee an answer for several days, but finally told him to go if he could find a place where he could do better. The lessee found another place, and after that the defendant wrote him letters, the contents of which are not disclosed; but the tenant stated that it was too late, that he had another place, and moved off the farm in April, 1908, leaving the growing crop of wheat and rye.

In July following the lessee sent his son and daughter (the plaintiff) to harvest the wheat. When the son was on his way to cut the grain, defendant asked him when he was going to cut it, and the son stated that he was going to cut it then. Defendant stated that it ought to have been cut a week ago; that it was all lodging. The son went on and cut it, and defendant said nothing more and made no objection to the cutting. After the wheat and rye were cut the son and daughter shocked it up, and when it was ready to thresh the lessee went to thresh the wheat. The lessee had assigned the crop to his daughter, and when he arrived with the threshing machine the defendant asked him what he was going to do. The lessee stated that his daughter had sent him over to thresh the wheat. Defendant replied that he would have to put the wheat in the barn and thresh it there. The lessee answered, "No," that he could thresh the wheat where he pleased. Then defendant said that he had got to settle first. The lessee replied that he would settle; that when the defendant paid the damages to the land he would pay the rent. The lessee had about eight bags threshed, and the defendant took that away from him and refused to let him have that or any of the grain.

The claim now is that upon the undisputed testimony the plaintiff is not entitled to recover; that he, having abandoned the premises without paying the rent, lost his right to the grain. I think we should not so hold as a matter of law. I think the evidence is sufficient to show that there was an eviction from a substantial part of the premises, and, if so, the payment of the rent was suspended. Christopher v. Austin, 11 N. Y. 216; Peck v. Hiler, 24 Barb. 178; Matter of Hall v. Irvin, 78 App. Div. 107, 79 N. Y. Supp. 614; Sully v. Schmidt, 147 N. Y. 248, 41 N. E. 514, 49 Am. St. Rep. 659. In any event, if there was a partial eviction, he was entitled to an abatement of the rent accordingly. Blair v. Claxton, 18 N. Y. 529. Even in summary proceedings to recover possession of demised premises, any new matter constituting a legal or equitable defense or counterclaim may now be set up. Code of Civil Procedure, § 2244. And if the lessee's claim equaled or exceeded the amount of the rent unpaid, that would be a complete answer to the claim for rent. Asking for a reduction of the rent in January and remaining in possession until April, the end of the year, when the last installment of rent became due, is not, as it seems to me, necessarily inconsistent with the claim of an eviction. The condition of the premises remained the same as theretofore. The lessee was still deprived, as the proof tends to show, of a substantial part of the use and enjoyment of the premises, and I think it cannot be said that the reduction in the rent which he asked was at all out of proportion to the deprivation and curtailment in his use of the prem-

ises. Nor do I think he was required under such circumstances to remain upon the premises in order to save to himself· his crops of rye and wheat.

Furthermore, irrespective of the question of eviction, I think the circumstances under which the lessee gave up possession of the premises are quite consistent with the claim that he was to have the growing crops of wheat and rye. He had complained to the defendant from time to time that his rights had been invaded, that so much land had been taken away from him that he could not make the rent, and therefore asked for a reduction. So far as the record discloses, the defendant permitted him to go without even asking him for the rent. The defendant consented to the lessee cutting and shocking the grain and never made any claim thereto until a part of it was threshed. I think under such circumstances, whether there was an eviction or not, it can well be found that the defendant is estopped from now claiming that the crop belongs to him. Duffus v. Bangs, 122 N. Y. 423, 25 N. E. 980; Bernheimer v. Adams, 70 App. Div. 114, 75 N. Y. Supp. 93, affirmed 175 N. Y. 472, 67 N. E. 1080.

I think the judgment should be reversed, and a new trial granted.