### MONTELLO BRICK CO. v. TREXLER.

(Circuit Court of Appeals, Third Circuit. February 15, 1909.)

#### No. 58.

1. FIXTURES (§ 27*)—RIGHT OF TENANT TO REMOVE TRADE FIXTURES—CONSTRUCTION OF LEASE.

Covenants restricting or claimed to restrict the tenant's ordinary right to remove trade fixtures are always strictly construed, and cannot be extended by implication.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 22; Dec. Dig. § 27.*]

2. BANKRUPTCY (§ 140*)—TRADE FIXTURES BUILT BY BANKRUPT LESSEE—RIGHT OF TRUSTEE TO REMOVE.

A lease for a long term of three brick plants and a separate tract of farm land described, as included therein, the real estate, "together with all its brick plants, works, * * * now held or owned or leased by (lessor) or which * * * may be acquired by (lessor), and all erections, extensions or additions to the same which may at any time hereafter be located or constructed on the premises," and required the lessee on the termination of the lease to return "the demised premises in good order and condition, with all improvements, additions and extensions, without any compensation to be paid for said improvements, additions and extensions." The lessor and lessee were corporations, the stockholders and directors of which were the same. The lessee built on the farm land a new and extensive brick plant, at a cost of $770,000, with borrowed money which was unpaid when it became a bankrupt. It carried such plant on its books as an asset. Held that, especially in view of the relations between the parties, such provisions of the lease could not be construed to give the lessor the right to hold such plant as against the creditors of the bankrupt, but that the latter's trustee was entitled to remove it as a trade fixture.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy. For opinion below, see 163 Fed. 624.

Charles Henry Jones, Richmond L. Jones, and John G. Johnson, for petitioner.

Harry F. Kantner, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHI-BALD, District Judge.

BUFFINGTON, Circuit Judge. In the court below, the Montello Brick Works, a corporation, was adjudged bankrupt December 10, 1907. That company on January 1, 1903, had leased from the Montello Brick Company, a corporation, for the term of 999 years, three extensive brick plants which the latter company had been operating. In addition to the premises on which these plants stood, there was also leased a disconnected tract of farm land of 30 acres. Subsequently, the lessee determined to erect a fourth plant, to make brick under a new process. It borrowed large sums, which remain unpaid, and therewith built an extensive plant on the 30-acre farm. On the bankruptcy of the Montello Brick Works, the lessee, the trustee claimed the right to remove, as a trade fixture, the plant the lessee had thus erected. The court so ordered, whereupon the Montello Brick Company, the lessor, filed this petition to review such order.

The petitioner concedes that the brick plant in question, while of a substantial character, is a trade fixture, and falls under the general rule that trade fixtures are subject to timely removal by a lessee. It contends, however, that this plant which the lessee has built and paid for is excepted from the trade removal rule by reason of the provisions of the lease that:

"At the expiration of the term hereby created, or earlier termination in the way herein provided. Montello Brick Works shall return and surrender to Montello Brick Company the demised premises in good order and condition, with all improvements, additions and extensions without any compensation to be paid for said improvements, additions and extensions by Montello Brick Company."

In construing this lease, the burden is on the lessor to show a clear intent to except this trade fixture plant from the general trade fixture rule. That rule is one favored by courts, since it not only tends to foster trade, but enables landowners to rent their lands to advantage for trade use by others. In Fox v. Lynch, 71 N. J. Eq. 537, 64 Atl. 439, it is said:

"Covenants restricting or claiming to restrict the tenant's ordinary right to remove trade fixtures are always strictly consrrued, and cannot be extended by implication."

Reference may also be made to cases cited in 13 Amer. & Eng. Ency. of Law, p. 644. Now the lessor's contention is that this new plant, although not then erected, formed part of the premises leased, and is covered by the inclusive descriptive clause, which, following the description of three existing plants and the farm land, provides:

"Together with all its brick plants, works, machinery, fixtures, shops, buildings, structures, stables, improvements, tenements and hereditaments of whatever kind or description and wherever situate, now held or owned or leased by Montello Brick Company, or which, at any time hereafter, during the term of this demise, may be acquired by Montello Brick Company; *and all erections, extensions or additions to the same which may at any time hereafter be located or constructed on the premises.*"

This clause, and particularly the part in italics, it is alleged, embraced the plant thereafter built on the farm land, and subjected it to a return to the lessor under the subsequent clause of the lease which is quoted above. It will thus be observed that no general principles of law are involved, but the case turns on the meaning of this particular lease. With a view to ascertain that intent, it is to be noted that the lease was not an improvement one, such as is entered into for the purpose of improving property by erections which at its termination shall become the property of the lessor as a partial compensation for the term. The property was already improved for trade purposes; three large brickmaking plants were on it, and the intent was, as stated in the lease. that the lessee was to "conduct, continue and extend the business now carried on by Montello Brick Company as fully and entirely as Montello Brick Company can or could do." Indeed, the shareholders and directors of both companies were substantially the same, and the premises were leased to enable the lessor to finance it. As the lessee undertook to pay a rental in the shape of dividends direct to the stockholders of the lessor, it is manifest that the stockholders of that company, through the agency of this lease, undertook to carry on business for themselves as stockholders of the lessee company without involving their plant in liability. This they have done, and the premises they leased are now returned to them unincumbered at the end of their disastrous venture. But they seek in addition to acquire, as an incident to 30 acres of farm land which cost them $9,000, a trade plant thereon which cost the lessee some $770,000. Now, when we consider that this plant was built with the money which the lessee obtained from creditors who still remain unpaid, and that the lessee on its books and in its statements on which credit was obtained carried this plant as an asset of its own, we have a construction placed on this lease by the parties themselves that cannot be lightly disregarded. True, the act of a lessee in claiming ownership of a plant as an asset could not ordinarily affect a lessor, but when, as here, the board of directors and shareholders of the two companies were the same, and they permitted such statements to be issued without objection, there is ground for saying that such acts fairly evidence the construction which all parties in interest in both companies placed upon the lease. "Tell me," said Sugden, Lord Chancellor, in Attorney General v. Drummond, 1 Drury & Warren, 368, "what you have done under such a deed, and I will tell you what that deed means." And their acts in treating this new plant as an asset of the company were in accord with the proper construction of the lease. In the first place, the document contemplated new erections as distinguished from the then existing works of the lessor, for the lease authorized the lessee "to erect such other works as in the judgment of Montello Brick Works may be advisable." Now, this

clause evidently referred to works not already provided for (else it was needlessly inserted), and was meant to refer to future and different erections than those mentioned in the descriptive clause preceding, viz.:

"Together with all its brick plants, works * * * now held or owned or leased by Montello Brick Company, or which * * * may be acquired by Montello Brick Company, and all erections, extensions or additions to the same which may at any time hereafter be located or constructed on the premises."

Indeed, the clause last quoted shows that, so far as brick plants are concerned (and it will be observed that the subject of the present controversy is a brick plant, and not a mere addition to a plant), the parties contemplated two classes of plants in such clause, viz.: First, the three plants then existing; and, secondly, those that might thereafter be acquired. The express mention of these two classes was an exclusion of others. And this implied exclusion is emphasized by the fact that in a later clause the attention of the parties was called to a third kind of plant, viz., when the lessee was authorized "to erect such other works as in the judgment of Montello Brick Works may be advisable." Moreover, the provisions for the insurance, maintenance, repair, and replacement undertaken by the lessee did not cover new plants which it might erect under the clause just quoted, so that if the contention of the petitioner is correct this new plant, which is claimed belonged to it as lessor, the lessee was not bound to insure, etc. It is therefore manifest that the words "to the same" in that part of the clause which reads, "and all erections, extensions or additions to the same which may at any time hereafter be located or constructed on the premises," refer to plants in esse, viz., "now held, or owned or leased by Montello Brick Company," and only to those particular in futuro ones, viz., which "may be acquired by Montello Brick Company."

We are therefore of opinion that a new and separate plant built by the lessee was not included in the descriptive clause above quoted; and that clause only referred to the three plants of the lessor then existing and to such future ones as it might acquire. It was conceded at the argument that unless the clause we have quoted embraced the new plant here in question, and made it part of the demised premises, there was no obligation to return it by virtue of the subsequent clause, which has been quoted. And, indeed, the fact that the return clause which, so far as structures are concerned, only embraced "all improvements, additions and extensions" (words which more aptly describe that which was done to existing plants than designate wholly new erections), would seem to strengthen the construction we have placed on the main clause.

After careful consideration, we are of opinion the order of the court should not be disturbed. That it did substantial justice we are certain, and to reverse it would take the ownership of this building from those who helped pay for it and give it to those who did not. In affirming this decree and treating this plant as an asset of the company, we are but enforcing the intent of those who, while the lessee was operating, treated it as an asset of that company.

The petition to review is therefore dismissed.