## In re HOWARD LAUNDRY CO.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

### No. 132.

1. FIXTURES (§ 15*)—TRADE FIXTURES—LANDLORD AND TENANT.

Whether valuable machines placed on premises leased for a term of years were trade fixtures, and removable as between the landlord and the tenant's trustee in bankruptcy, depended on whether the various machines could be removed without substantial injury to the building; and this, notwithstanding a clause in the lease providing that all additions and improvements which might be made by either party to or upon the premises should be the property of the landlord, as such provision should be construed to apply to permanent additions to the building, and not to personal property which, for business purposes, is temporarily and detachably fastened to the floor or ceiling of the building.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 23–29; Dec. Dig. § 15.*]

2. FIXTURES (§ 32*)—TRADE FIXTURES—REMOVAL—RESTORING CONDITION OF PROPERTY.

Where an engine resting on a brick foundation two feet higher than the floor level was held to be a trade fixture, and removable, as against the landlord, by the tenant's trustee in bankruptcy, the landlord was entitled to have the foundation removed and the floor made level, if she desired it, at the expense of the estate.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 63, 65; Dec. Dig. § 32.*]

3. BANKRUPTCY (§ 116*)—TITLE TO PROPERTY—PLENARY SUIT—WAIVER.

Where an issue was raised between a landlord and her tenant's trustee in bankruptcy as to the ownership of certain machinery placed on the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rented property by the bankrupt, the landlord was entitled to waive her right to have such issue determined in a plenary suit, and did so by appearing without objection and submitting her right to the master and the court, and was estopped thereafter to claim that the bankruptcy court had no jurisdiction thereof.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

Appeal from the District Court of the United States for the Southern District of New York; Charles M. Hough, Judge.

In the matter of bankruptcy proceedings of the Howard Laundry Company. On appeal from an order of the District Court for the Southern District of New York, confirming the report of a special master holding that certain pieces of machinery used by the bankrupt in its business were trade fixtures, and belonged to the receiver in bankruptcy, and not to the landlord, this appeal is taken. Affirmed.

Kellogg & Rose, of New York City (Abram J. Rose, William K. Hartpence, and Asa B. Kellogg, all of New York City, of counsel), for appellant.

Kurzman & Frankenheimer, of New York City (John Frankenheimer and Abraham L. Gutman, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. At the time involved in this controversy, Henrietta M. Parker was the owner of the premises Nos. 1198–1200–1202–1204 Third avenue, New York City, which she leased to the bankrupt, Howard Laundry Company. The premises with the exception of the floors above the store floors of the premises Nos. 1202–1204 were used by the bankrupt as a steam laundry and were equipped with the machinery necessary to carry on such business. Dispute having arisen as to what part of the plant was personal property which passed to the trustee and what part was real property because permanently attached to the freehold, the court appointed a special master to view the premises, take proof and report to the court "with all possible dispatch."

The master reported that the boilers were permanently attached to the realty and could not be removed without permanent injury to the premises. He made a similar report regarding two cement bleach tanks. Regarding the engine in the cellar of No. 1200 Third avenue the master says:

"The engine rests upon a brick foundation built in the cellar, which brick foundation is approximately 2 feet higher than the level of the cellar floor, and is about 8 feet long and 3 feet wide, and upon which rests the engine, said engine being held in place by means of nuts and bolts affixed to the raised brick foundation. This brick foundation extends below the level of the cement floor of the cellar somewhat less than 2 feet. The engine is connected with the boiler by means of a steam pipe, which conveys the steam from the boiler to the engine, of a circumference of about 2½ to 3 inches. Connected with this engine is a system of pipes running throughout the building connected with the various laundry machines, these machines in turn being connected by means of the usual shafting with pulleys fastened upon hangers. In my opinion the engine can be readily detached from the

brick foundation and removed, and the brick foundation taken away and the floor restored to its original level, and I therefore report that this engine is not so annexed to the freehold that it cannot be removed without substantial injury to the premises."

As to the seven washing machines, the four extractors, the two water pumps, the exhaust fan and the soap tank, all in the cellar of No. 1200, the master reported that they could be removed without substantial damage to the freehold.

The master makes similar findings as to the pulleys, belting and shafting throughout the premises and as to all the machinery, means and appliances used in a steam laundry plant which can be removed without any substantial damage to the buildings. He finds, however, that the two bleach tanks above referred to were built where they now stand and cannot be removed without breaking the tanks or injuring the floor to which they are connected and reports that they cannot be removed without substantial damage to the freehold.

[1] In short, the master, recognizing that an extensive laundry plant containing a variety of valuable machines had been placed on the premises under a seven years' lease, made the criterion of ownership depend upon the question whether or not the various machines could be removed without substantial injury to the building. If the chattel could be so removed, he decided in favor of the tenant, if it could not be, he decided in favor of the landlord.

This ruling we believe to be in accordance with the rule laid down by this court and the courts of the state and is unaffected by the clause of the lease providing that all additions and improvements which may be made by either party to or upon said premises shall be the property of the landlord. This clause was simply declaratory of the law and gave the landlord no additional right to articles found to be trade fixtures. It was undoubtedly intended to cover permanent additions to the buildings and not personal property which for business purposes is temporarily and detachably fastened to the floor or ceiling of a building.

The presumption is that trade fixtures belong to the tenant and if it be the intention of the parties that they shall become the property of the landlord at the expiration of the lease, that purpose should be stated in language so clear and explicit that there can be no doubt as to its meaning. That intent cannot be deduced from broad and general language, which is usually found in the printed forms, regarding "improvements"; when this word is used without any language defining or extending its ordinary meaning, the courts with substantial uniformity have held that it relates to improvements to the realty and not to trade fixtures.

As was said by the court in Ames v. Trenton Brewing Co., 56 N. J. Eq. 309, 38 Atl. 858, affirmed 57 N. J. Eq. 347, 45 Atl. 1090:

"The improvements, to be within the provisions, must, when made, savor of the realty. The association of the words in the clause of the covenant shows this to be the true meaning. It was 'alterations, repairs or improvements made upon the premises' which should be left. That is, if the premises should be altered, as by opening the wall and placing a window, the window should remain. If they should be repaired, as by hanging a new door in the place of a broken one, the new door should be left. I think the improvements must also have been improvements of the demised premises, so that the condition and value

of the premises as realty were improved, and that the word did not include articles which were in their nature chattels which had not been subjected by the parties to any action which converted them into realty. The covenant did not refer to improvements brought upon or placed in the demised premises. It was improvements made of the premises themselves which were agreed to be left."

The questions here debated have been so frequently passed upon by the courts that it is only necessary to refer to a few of the leading cases. Wiggins Ferry Co. v. O. & M. Railway, 142 U. S. 396, 415, 416, 12 Sup. Ct. 188, 35 L. Ed. 1055; Bernheimer v. Adams, 70 App. Div. 114, 75 N. Y. Supp. 93, affirmed 175 N. Y. 472, 67 N. E. 1080; In the Matter of New York, 192 N. Y. 295, 84 N. E. 1105, 18 L. R. A. (N. S.) 423, 127 Am. St. Rep. 903; Montello Brick Co. v. Trexler, 167 Fed. 482, 93 C. C. A. 118; Holbrook v. Chamberlin, 116 Mass. 155, 17 Am. Rep. 146. See, also, the decision of this court in Bergh v. Herring-Hall Co., 136 Fed. 368, 69 C. C. A. 212, 70 L. R. A. 756.

The question upon which the legal status of each piece of machinery turned was one of fact. The master had unusual opportunity to reach a correct conclusion because he saw the plant and personally inspected the manner in which it was installed and examined witnesses on the premises. We see no reason to question the accuracy of his conclusions.

[2] We have some doubt as to the ruling of the master in the case of the engine, regarding which his finding is quoted in full. The engine rested upon a brick foundation 2 feet higher than the level floor. Equitably this foundation should be removed and the floor made level at the expense of the estate. But in the absence of proof as to the cost of removal and without knowing whether the landlord wishes it removed or will consent to its removal, it is difficult to say what, if any, relief should be given. The master who saw the situation would not have made the report as to this piece of machinery if its removal was to result in any serious damage to the premises. Should it appear that the receiver has removed the engine, leaving the foundation, and that the landlord desires the foundation removed or has herself removed it, we see no reason why the District Court may not make an order directing that the expense of removal together with any damage which may have been done the building by reason thereof, be paid out of the estate.

[3] The practice established in ordering a reference is so simple, direct and inexpensive that it should be encouraged where, as here, speedy settlement of the bankrupt's estate is of such controlling importance. Although the landlord probably had the right to insist that the title to the propery should be determined in a plenary suit, she could waive that right and we think she did so when she appeared without objection and submitted her right to the master and the court. It is too late now that the court has found against her upon a part of her claim, to urge the objection of lack of power. Every fact bearing upon the controversy is now before the court. To dismiss the proceeding upon the ground that it should have been presented in different form would cause delay and expense with the result that the same questions upon the same proof would again be submitted for decision.

Indeed, we understood at the argument that both parties, being anxious that the controversy should be determined on its merits, consented to waive objections of a technical nature.

The order is affirmed.