## GLENN v. W. C. MITCHELL CO.

(Circuit Court of Appeals, Eighth Circuit. November 17, 1925.)

No. 7016.

**1. Fixtures ⊜27(3)—Elevator on railroad right of way held subject to sale and execution as personalty.**

Where lease of site for elevator on railroad right of way treated improvements that might be made as personalty, and where original lessee sold elevator as personal property to judgment debtor, such elevator was subject to sale and execution as personal property.

**2. Fixtures ⊜35(2)—Evidence held to show that owner of elevator on railroad right of way had no lease on site from railroad, and elevator subject to levy and execution as personalty.**

On issue whether elevator on railroad right of way was subject to execution as realty or personalty, evidence *held* insufficient to show that purchaser of elevator was assignee of lease to elevator site, which required railroad's consent to assignment.

**3. Fixtures ⊜27(3)—Assignee of lease, which treated improvements as personalty and provided for lessee's removal thereof, had right to remove property, and property was subject to levy and execution as personalty.**

Where lease of elevator site on railroad right of way treated improvements to be made thereon as personal property removable by lessee, creditors of assignee of lease could resort to such improvements as personal property for satisfaction of their claims.

**4. Execution ⊜256(2)—Evidence held not to show that marshal at execution sale made statements preventing free competitive bidding.**

In suit to set aside execution sale of elevator, evidence *held* insufficient to warrant finding that marshal made statements at sale which prevented free competitive bidding.

Appeal from the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Bill by J. O. Glenn against the W. C. Mitchell Company to set aside a sale under execution of a grain elevator. From the decree dismissing complainant's bill, he appeals. Decree affirmed.

See, also, 282 F. 440; 285 F. 381.

S. E. Ellsworth, of Jamestown, N. D., for appellant.

Willis Doherty, of Minneapolis, Minn., for appellee.

Before LEWIS and KENYON, Circuit Judges, and MUNGER, District Judge.

LEWIS, Circuit Judge. This is an appeal from a dismissal of appellant's bill on final hearing, wherein he asked the court to vacate and set aside a sale under execution made by the Marshal of a grain elevator at Merricourt, N. D. The execution was issued on a judgment obtained by appellee for a partnership debt of Glenn & Hafey, against appellant as surviving partner of the firm. See Glenn v. W. C. Mitchell Co. (C. C. A.) 282 F. 440; Id. (C. C. A.) 285 F. 381. The attack made on the sale is, first, that the elevator was advertised as personal property, whereas it was a chattel real, having been constructed under a ground lease, and under the State statute regulating the subject it should have been advertised and sold as real estate, thus giving the judgment debtor a period for redemption; secondly, that the partnership and Glenn as surviving partner was lessee of the ground on which the elevator stood and that the elevator and leasehold interest constituted a chattel real, that the elevator and lease should have been sold together as one and to sell them separately was destructive of the value of each; and thirdly, the Marshal made statements at the sale which prevented free competitive bidding. As to the first point, the State statute relied on defines estates for years as chattels real, and requires that they be sold on execution as real estate. The facts bearing on the objections raised will be stated. [1] The elevator was constructed on the right of way of the Soo Railway Company, under a written agreement between that company and the Powers Elevator Company, of date June 1, 1917. It is the usual contract made by railway companies in such cases. It is termed a lease, it described the ground on which the elevator was constructed, and gave the lessee (Powers Elevator Company) the

right to have and to hold the described tract "for and during. the will and pleasure of the lessor, its successors, .or assigns, and subject to termination upon six months' notice in writing." The lessee agreed to surrender the premises covered by the lease and give possession of the same to the lessor, its successors or assigns, within six months after receiving said written notice, and to remove from said premises within said time all buildings and improvements placed thereon. The premises leased were to be used exclusively as an elevator site and the lessee agreed to maintain and operate it for public use in the receipt, elevation and delivery of grain on board cars, it required annual payments of $20 by the lessee as rental, bound the lessee to pay all taxes, fees and other charges that might be levied upon the improvements, or against the lessor, by reason of the use of the premises. The lessee agreed to give the lessor preference over other railroad companies in routing its transportation business, rates and service being equal. It reserved to the railway company the right to construct and operate railway tracks over the premises leased, and if the building or structures placed thereon by the lessee should interfere with any track changes that the railway company might decide to make, the lessee should on receiving notice to do so move its buildings or structures at its own expense to such reasonable location as the railway company might direct, so as to permit the track changes to be made. Should the lessee fail to pay the rental or fail to fulfill any of the covenants or provisions of the lease or fail to use the premises for the purpose and business specified, then the railway company, by giving the lessee thirty days' notice in writing, might terminate the lease, re-enter and take possession. It required the lessee to remove the buildings or improvements on termination of the lease, and leave the premises in the condition they were in when the lease was given. There is a clause prohibiting the assignment of the lease or the subletting of any part of the premises, or the use or occupancy thereof by any other person than the lessee without the written consent of the railway company. It reads thus:

"This lease shall not be assigned or in any manner transferred or said premises, or any part thereof, sublet, used or occupied by any other person or corporation than the lessee, or for any other purpose than that specified herein, without the written consent of the railway company."

There are other restrictions on the use and enjoyment of the leased premises, which are not here material. "A special agreement between landlord and tenant regarding fixtures supersedes the general rules of law regulating their mutual rights and obligations." R. C. L. 1070. The lease treated the improvements that might be put upon the ground as personal property, giving the lessee the right to remove them. They were purchased by Glenn & Hafey as personal property, and we think they were subject to sale on execution as personal property. 2 Taylor, Landl. & Ten. (9th Ed.) § 549; 2 Tiffany, Landl. & Ten. §§ 241, 247; Freeman v. Dawson, 110 U. S. 264, 4 S. Ct. 94, 28 L. Ed. 141; Broaddus v. Smith, 121 Ala. 335, 26 So. 34, 77 Am. St. Rep. 61; Morey v. Hoyt, 62 Conn. 542, 26 A. 127, 19 L. R. A. 611; Hershberger v. Johnson, 37 Or. 109, 60 P. 838; 11 Am. & Eng. Encyc. Law (2d Ed.) 622; 13 Am. & Eng. Encyc. Law (2d Ed.) 657; 26 C. J. 731.

[2, 3] It is not clear from the record just when the partnership of Glenn & Hafey was entered into. Mr. Glenn testified that the agreement between them in the formation of the partnership was oral, and that it was made in 1921. He also testified that the partnership operated the elevator in the Fall of 1920. Mr. Hafey died on January 7, 1921. On the second day of that month Powers Elevator Company executed a bill of sale of the elevator to Glenn & Hafey. It recites a consideration of $10,000 paid by Ed. Hafey and J. O. Glenn, and therefore Powers Elevator Company " * * * do hereby Grant, Bargain, Sell and Convey unto the party of the second part, their executors, administrators and assigns, for ever, the following described goods, chattels and personal property, to wit: One grain elevator, together with tools and equipment now in the elevator located on Lots Thirty-one (31) and Thirty-three (33), on the Soo Line Right of Way, in the Village of Merricourt, North Dakota, and subject to the terms and agreements of the lease issued to the Powers Elevator Company by Minneapolis, St. Paul & Sault Sainte Marie Railway Company," generally known as the Soo Railway Company. The bill of sale contains a covenant of the seller "to warrant and defend the sale of said Goods, Chattels and Personal Property." The judgment on which the sale was made was entered April 23, 1921. The foundation and walls of the elevator were constructed of cement and brick. There is no proof that Glenn & Hafey obtained a written assignment of the lease, but if such an assignment had been made by the original

lessee and accepted by the railway company Glenn & Hafey would have had the right of removal also, and their creditors could resort to the improvements as personal property for satisfaction of their claims. It is claimed by appellant that there is evidence of an assignment of the lease, but we do not so regard the testimony of Glenn, on which the claim is based. That testimony came about in this way: Glenn testified that the partnership purchased the building from Powers Elevator Company and at the time of the purchase received the bill of sale, that the bill of sale had been in his possession ever since. It was offered in evidence. Then this question was asked him:

"Q. And it was held by the Powers Elevator Company and afterwards by your partnership of Glenn & Hafey under a lease issued by the Soo Railway Company?".

There was then colloquy between counsel and court and counsel, followed by these questions and answers:

"Q. Was that the fact or was it not? A. That was owned by the Powers Elevator Company.

"Q. Well, the question is, was the elevator held first by Powers Elevator Company under a lease with the Soo Railway Company? A. Yes, sir.

"Q. And afterwards by Glenn & Hafey under an assignment of the same lease?

"Mr. Doherty: Objected to as incompetent, irrelevant and immaterial, not the best evidence, not the proper way to prove—

"The Court: It is not the best evidence, but on the theory that it is a preliminary question the objection will be overruled.

"Mr. Doherty: Exception.

"A. Yes."

The question was leading and suggestive. It put the answer in the mouth of the witness. No reason is given for not including in the bill of sale an assignment of the lease, if such was the intention and agreement. Furthermore, the execution sale was twice continued because of motions by Glenn attacking the right of the Marshal to proceed therewith, and hearings were had upon those motions, and it is not claimed that at any time during this protracted litigation a written assignment of the lease was exhibited. Glenn's memory seems to be good, his counsel throughout this litigation is thoroughly competent, and if it was believed that an assignment of the lease was an important fact, as now contended, it cannot be doubted that proof of the fact would have been clearly and fully made, and not left to phantom. But conceding that such an instrument had been executed by the Powers Elevator Company, or that the claimed assignment was by verbal understanding, it is unavailing; for there is no testimony that the Soo Railway Company ever consented to an assignment of the lease, nor is there any proof that Glenn & Hafey were recognized by the Soo Railway Company as its lessee. We cannot find in the record proof that Glenn & Hafey, or Glenn the surviving partner, paid to the railway company any of the annual rental instalments or taxes, or in any way brought to the notice of the railway company a claim that the firm was assignee of the lease. On objection by Glenn's counsel the court ruled that he need not answer this question:

"After the levy on the elevator was made (May, 1921) you did not pay any taxes on the elevator, did you?"

And the further question:

"Q. Do you know that Mitchell & Company paid about $800.00 taxes on the elevator?"

Again, at the close of the introduction of testimony for appellant his counsel stated:

"At this time, your Honor, we would ask that you take judicial notice of all proceedings had before you on the motion to restrain this sale before it was made, all of which are in the records of this court."

The record contains an affidavit of W. H. Schutt, agent of the railway company, who executed the lease in its behalf and had charge of the interests of the railway company in the property, and among other things he averred that the railway company " * * * never released said Powers Elevator Company under said lease dated June 1, 1917, designated as 'Lease No. 263–L,' and never consented to the Powers Elevator Company assigning such lease, or any other lease, to the firm of Glenn & Hafey, or J. O. Glenn as surviving partner, or any other person, and never accepted any one as assignee of the lease held by the Powers Elevator Company for said lots."

The trial judge certified, among other things, that at a prior hearing Glenn raised the question of having an assignment of the lease to the Powers Elevator Company, that the affidavit of W. H. Schutt was then offered in evidence, and that in this case he took judicial notice of that affidavit. The record fails to show that Glenn & Hafey ever became lessee of the railway company. It establishes the contrary, that it never became a lessee of the ground on which the elevator stood and that the only transaction it ever had with the Powers Elevator Com-

pany in connection with the subject-matter here involved was its purchase of the elevator as personal property. We think the court was clearly right in holding that the elevator was the personal property of the firm, and should be sold as such under the levy. Armstrong Cork Co. v. Merchants' Refrigerating Co., 184 F. 199, 107 C. C. A. 93; Montello Brick Co. v. Trexler, 167 F. 482, 93 C. C. A. 118; In re Ballard (D. C.) 279 F. 574, 589; Peyton v. Farmers' National Bank (C. C. A.) 261 F. 326, 329. On the facts found in the record the firm had no interest in the lease.

[4] Glenn testified that he read the notice of sale and that he thought from the notice the entire interest of the partnership, his and Hafey's in the elevator was to be sold, but he and several other witnesses who were at the sale testified that a bystander asked the Marshal what he was selling, and that the Marshal replied that he was selling only Glenn's interest, not Hafey's. In some respects these witnesses were not in accord as to the question put to the Marshal and his answer. But the Marshal testified that the question asked him was whether he was selling Glenn's interest in the elevator, and he replied: "You may not have understood this description in the notice of sale, so I will read it again." He then read the notice of sale the second time. The published notice of sale is in the record. It recites the amount of the judgment recovered by appellee, that it was rendered in the United States District Court for $13,877.74 on April 23, 1921, in an action wherein W. C. Mitchell & Company was plaintiff and J. O. Glenn as surviving partner of the firm of Glenn & Hafey was defendant, that it was rendered against J. O. Glenn as surviving partner of the firm, and that levy was made on May 12, 1921, upon all of the right, title and interest of J. O. Glenn in and to the elevator and certain other property therewith, that after delays (brought about by Glenn) he was commanded by writ of venditioni exponas to expose for sale the said personal property to satisfy said judgment, and he then published the notice that he would sell said property at one o'clock p. m. on May 16, 1923. And his return shows

that he made the sale as advertised. He further testified that after he had read the notice the second time he was again asked: "Does that mean now that you are selling Glenn's interest in the elevator?" And he replied: "It means exactly the property described in this notice of sale as I have read it to you." He then proceeded with the sale. Several other witnesses who were present corroborated the Marshal as to what was asked him and the replies that he made thereto. On this point the trial court found as follows:

"I think, while there is some difference in the testimony of witnesses, as might well be expected after this lapse of time, as to what occurred there, that the plaintiff herein has signally failed to prove by the burden of proof that the Marshal did any more than to inform inquirers that he was selling just what the notice authorized him to sell. There is some testimony, it is true, that he said he was selling the interest of Glenn only, but those witnesses, or part of them, again say that he read that from the notice of sale and that they so understood the notice."

There is ample proof in support of the court's finding. The trial judge saw the witnesses and heard them testify. He was better able to weigh their testimony and pass upon the disputed point than we are. We cannot say he erred in the conclusion he reached, and we accept his finding on that issue of fact. No other creditor of the firm has objected to the sale and the course pursued. There is no proof that there are other creditors.

In Hafey's Adm'r v. W. C. Mitchell Co. (C. C. A.) 293 F. 27, we noted the three remedies of a partnership creditor on the death of a member of the firm. Here the creditor was pursuing his remedy against partnership assets in the hands of the surviving partner who had succeeded to all the partnership property in trust for purposes of liquidation. Comp. Laws North Dakota 1913, § 6425.

The propositions of law argued by counsel for Glenn may be accepted as sound, but they have no application to the facts of this case. The decree is affirmed.