(125 App. Div. 668.)

### EXCELSIOR BREWING CO. v. SMITH.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. FIXTURES—ALTERATION OF BUILDING NOT CONSTITUTING A FIXTURE.

Alterations made by a lessee of a building to adapt it for use as a saloon, by which doors and their frames were removed, the openings enlarged, and the inclosures and doors extended 30 inches into a street, and marble platforms countersunk 2 inches into the water table, did not constitute movable fixtures or trade fixtures, which the lessee or his mortgagee could remove on a termination of the lease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fixtures, §§ 23–29.]

2. SAME—TRADE FIXTURES—WHAT CONSTITUTES.

Combination gas and electric chandeliers, wooden partitions around a toilet, including mirrors, porcelain urinals, and water-closet seats and connections, placed by the lessee in a building leased for saloon purposes, are trade fixtures, as affecting his right to remove them on a termination of the lease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fixtures, §§ 23–29.]

3. SAME—EFFECT OF LEASE.

A lease of premises to be used for saloon purposes, providing that all alteration made by the parties, excepting movable fixtures, should be the lessor's property, and be surrendered with the premises as a part thereof at the termination of the lease, limited the lessee's right to remove trade fixtures to such fixtures and alterations only as were movable and could be taken out of the building without interference with or detriment to the building, including its walls, ceilings, and doors.

Appeal from Trial Term, Kings County.

Action by the Excelsior Brewing Company against Charles Smith. From the judgment, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Terry Smith, for appellant.
C. Walter Randall, for respondent.

RICH, J. The defendant is the owner of real property on the corner of Washington and Flushing avenues, in the borough of Brooklyn. On November 19, 1902, he entered into a written lease with August Rathkamp, plaintiff's mortgagor, by which the latter leased the corner store on said property for a period commencing on November 20, 1902, and ending on January 1, 1908, under which Rathkamp entered into possession. The lease contained the following clause:

"Third. That the said lessee shall and will quit and surrender said premises at the end of said term in as good condition as the reasonable use thereof will permit (damages by the elements excepted), and shall not make any alterations in or on said premises without the written consent of said lessor, and all alterations which may be made by either of the parties hereto upon the premises, except movable fixtures, shall be the property of the said lessor, and shall remain upon and be surrendered with the premises as a part thereof at the termination of this lease, without disturbance, molestation, or injury, and all repairs and alterations of whatsoever kind or nature shall be paid for by said lessee."

On December 19, 1902, Rathkamp entered into a contract with one Vogel for making extensive alterations and changes in the leased building, which he designed to use for saloon purposes, and for the addition of movable and trade fixtures thereto, under which contract Vogel made such changes and alterations and constructed and installed such fixtures, completing his work on February 13, 1903. Rathkamp had made an arrangement with the plaintiff to advance him the money needed for such improvements to the extent of $3,500, which amount was advanced February 13, 1903, and on that day it took from Rathkamp a chattel mortgage upon (among other property) the alterations and fixtures put in the demised building by the mortgagor. Rathkamp stopped doing business in May following. Subsequently the plaintiff foreclosed its mortgage, and on the sale purchased the property, after which, and on May 14, 1904, it caused the defendant to be informed that it claimed to own all the fixtures of every kind that were in the saloon, and demanded the right to remove them. The defendant consented to the removal of such as were not attached to the building, and refused to permit plaintiff to take such as were. All of the fixtures that were movable were taken out, and the plaintiff then commenced this action, and has taken possession of and removed the property over which the contention in this action arises, which is specified in the return as:

"Three wooden storm houses, with glass windows and doors, and marble slab step underneath; six eight-light combination gas and electric chandeliers in store; three eight-light combination gas and electric chandeliers; set of wooden partitions around toilet, including mirrors; two porcelain urinals in toilet room; two seats and connections."

Upon the trial the court directed a verdict for the plaintiff for the possession of the chandeliers, and in favor of the defendant for the other articles.

The appellant argues that the clause quoted from the lease was inserted to permit the lessee to mortgage the fixtures and alterations he was about to make, that he might obtain from the plaintiff the money needed to make the changes, and infers that the defendant knew of his intention so to do when the lease was made; but the evidence does not support this contention. Rathkamp testifies that he had no conversation with the defendant on that subject before the lease was executed, and nothing was said as to what the "movable fixtures" specified in the lease were; and the defendant says he did not know or hear of any intention on the part of his lessee to give a mortgage until February, 1903, after it had been given, and that Rathkamp did not tell him, during the negotiations for the lease, or at the time of

its execution, that he intended to borrow money of the plaintiff with which to make the contemplated improvements, but, on the contrary, did tell him that he had his own money to use for that purpose and was independent of any brewery. On cross-examination he testified that it was.not a fact that the clause was put in the lease to allow Rathkamp to mortgage the property to the plaintiff, and that Rathkamp did not tell him so.

There are none of the necessary elements in the case to estop the defendant from asserting against the plaintiff such rights as he acquired under the provision of the lease quoted. The alterations and changes made in the front and side walls of the building, by which the doors and their frames therein were removed, the openings enlarged, and the inclosures and doors extended 30 inches into the street, and marble platforms countersunk 2 inches into the water table, did not constitute such a movable fixture or trade fixture as, under the provisions of the lease or the legal right of the tenant outside of the lease, the latter was entitled to remove. It was a substantial alteration, which by the provisions of the lease belonged to the defendant, and was to be surrendered to him with the premises, and as a part thereof, upon the termination of the lease. They were not wooden stormhouses, but part of the sides and front of the building, taking the place of the store entrances as they existed at the time the lessee took possession. Rathkamp had no right to remove them, and the plaintiff took no greater title or right than his mortgagor had.

The other property replevined comes properly under the definition of "trade fixtures," and in the absence of any provision or reservation in the lease the tenant, and consequently his mortgagee, would have had the right to remove it at any time before the termination of the lease. Bernheimer v. Adams, 70 App. Div. 114, 75 N. Y. Supp. 93, affirmed 175 N. Y. 472, 67 N. E. 1080. I do not believe, however, that this principle of law is applicable in view of the stipulations, and this brings us to the crucial question in the case: Did the parties intend by the use of the words "movable fixtures," to limit the lessee's right to remove ordinary trade fixtures, and confine such right of removal to such fixtures and alterations only as were attached or affixed to the building in such manner that their removal required no interference with the walls, ceiling, or floors. This was the conclusion of the learned trial justice, and I think he was right. The provisions of the lease are not ambiguous, but clear and direct. They show an absolute agreement by which the lessee obligated himself to pay for all alterations, which, with the exception of those that were movable, became the property of the defendant and were to be surrendered to him at the termination of the lease, as part of the demised premises, without disturbance, molestation, or injury. We may not regard this provision of the lease as being without meaning. We are bound to assume that it was placed in the lease for some purpose, and was designed to give the defendant some right that he would not have in its absence. If the lease was silent upon the question of the rights of the parties with reference to trade fixtures placed upon the property by the tenant for the accommodation of his patrons, Rathkamp would

have the right to remove them at the termination of the lease. It seems to me plainly apparent that the use of the words limiting his right of removal to "movable fixtures," and giving the ownership of all others to the defendant (landlord) to be surrendered to him as part of the demised premises, without disturbance, molestation, or injury, on the termination of the lease, establishes the intent of the parties to be that the legal right of removal of trade fixtures, which the law gave the lessee without reservation, was to be limited and restricted to such fixtures and alterations as were movable and could be taken out of the building without interference with or detriment to the building itself, including its walls, ceiling, and floors. There is no other meaning that can be given to the words used in this lease. They are either without meaning and wholly purposeless, or they operated as a limitation of such rights as the lessee would have had, and an enlargement of the rights which the landlord would have had, in their absence.

No error is shown which warrants a reversal, and the judgment and order should therefore be affirmed, with costs. All concur.