REBER v. CONWAY.

(Circuit Court of Appeals, Third Circuit. February 18, 1913.)

No. 1,640.

LANDLORD AND TENANT (§ 157*)—FIXTURES—CONSTRUCTION OF LEASE—"DE-TACHED."

Where property which had been previously used as a large and modern livery stable was leased to be used as an ice cream factory requiring many structural changes in the building, so that, on the termination of the lease, the property would not be suitable for use again as a livery stable, a provision in the lease that all improvements or additions made by the lessee should not be detached from the property, but should remain for the benefit of the lessor, covered all machinery and other trade fixtures attached to the property by the lessee, and was not limited to mere structural changes in the building; the word "detached" being used as the antithesis of "attached" to cover property attached to the building, etc.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572, 574–607; Dec. Dig. § 157.*

For other definitions, see Words and Phrases, vol. 3, p. 2034.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

In the matter of bankruptcy proceedings of Bahls Ice Cream & Baking Company. From an order sustaining a referee's determination, awarding certain fixtures to the landlord under the lease (195 Fed. 986), J. Howard Reber, trustee, appeals. Affirmed.

J. B. Colahan, of Philadelphia, Pa., for appellant.

H. Edgar Barnes, of Philadelphia, Pa., for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and RELL-STAB, District Judge.

GRAY, Circuit Judge. This is an appeal from an order of the court below, sitting in bankruptcy, affirming the report of the referee in bankruptcy and decreeing that the property which is the subject of this dispute did not belong to the appellant, J. Howard Reber, Receiver and Trustee in Bankruptcy, but to Thomas Conway, Jr., the owner of the premises on which said property is installed.

By an agreement dated January, 1910, Albert H. Manwaring let the premises, on which was situated a large brick structure, to a partnership trading as Bahls & Co. At the time the lease was made, the building was fitted up and adapted to use as a large and modern stable. The lease provided that the premises should be used as an "ice cream manufactory." Bahls & Co. went into possession and entirely converted the building from its previous condition into a structure specially adapted to the single purpose of an ice cream manufactory. The changes involved the construction of a raised concrete floor, three or four feet above the street level, extending the length of the building, and the installing of a system of connecting exposed and unexposed piping, the building of an elevator shaft and the installing of a complete equipment for ice cream manufacture, with freezers, mixer, motors and pumps, an ice crusher, &c. These machines were afterwards replaced by larger and heavier machines, which required for their accommodation extensive changes in the building and large brick supporting piers under the floors.

Subsequently, October 24, 1910, a corporation called the "Bahls Ice Cream & Baking Company" was created under the laws of Pennsylvania, which bought out the partnership of Bahls & Co., including the leasehold of the premises, and attorned as tenant, paid the rent reserved in the lease and remained in possession of the premises under the lease, until the receiver for the company, pursuant to the proceedings in bankruptcy, was appointed on January 10, 1912.

After the adjudication of the company as a bankrupt, March 1, 1912, Reber, the said appellant, became in due course trustee of the estate of the said Bahls Ice Cream & Baking Company.

On October 31, 1911, the owner, Manwaring, gave 90 days' notice to the lessee of his intention to terminate the lease February 1, 1912, the date of the expiration of the term, because the rent had fallen in arrears.

The premises were conveyed to the appellee herein, Thomas Conway, Jr., by deed of the lessor, on January 12, 1912, and the claim for arrears of rent was made on the same day by the said company.

On January 19, 1912, notice was given to the lessee of the forfei-

ture of the lease for the nonpayment of rent, and a copy of the notice was sent to the receiver, with a request that possession of the premises, their improvements and additions, be surrendered. The receiver refused to surrender the premises and laid claim to the improvements made thereon, being the property now in dispute.

February 16, 1912, on petition of the receiver, the court made an order for a special reference, to determine the ownership of the property mentioned. On March 1, 1912, the corporation was adjudged a bankrupt, and Reber, the receiver and appellant, was appointed trustee in bankruptcy. The report of the special referee was filed on March 7, 1912, which found that the ownership of the property in dispute was in the lessor and owner of the premises. This report was affirmed by the court on April 19, 1912, and a decree entered on May 15, 1912, dismissing the exceptions thereto, from which decree this appeal has been taken.

The lease contains the following provision:

"And it is hereby covenanted between the lessor and the lessee for themselves, their respective heirs or successors and assigns, as follows:

"(3) The lessee shall keep the demised premises in good condition during the continuation of this lease, remove all ashes, rubbish and refuse matter therefrom, and with the termination of this lease to deliver up the said premises to the lessor in as good condition and repair as the same now are, reasonable wear and tear and damage by accidental fire excepted. All improvements or additions made by the lessee shall not be detached from the property, but shall remain for the benefit of the lessor."

The report of the learned referee contains a clear and adequate discussion of the law and facts involved in the question presented, and the opinion of the court below dismissing the exceptions thereto and affirming the report of the referee is no less clear and emphatic in its approval of the reasoning upon which the conclusion of the referee is founded.

We do not question that, under the generally accepted law in this regard, as well as under the decisions of the Pennsylvania courts, all of the items embraced in this dispute are trade fixtures and, in the absence of any contract to the contrary, are removable from the premises, by the lessee. But, as said by the Supreme Court of Pennsylvania in Isman v. Hanscom, 217 Pa. 135, 66 Atl. 329:

"The question of trade or tenant fixtures does not enter into the case, and hence need not be considered. The lease, which is the contract between the parties, determines the ownership of the property in question, and hence the rights of the parties thereto depend entirely upon the proper interpretation of the instrument. * * * In such case, the contract is the law made by the parties themselves, and that must determine their rights."

What, then, does the lease mean, and how is the law of the contract thus made by the parties themselves to be interpreted?

It is to be noted that the building at the time of the lease was a stable, and was to be fitted by the lessee for an ice cream manufactory. To accomplish this, the whole character of the building had to be changed, and the lease contemplated that it should be so changed. At the termination of the lease, it could not be used as a stable, and it was therefore evidently contemplated that it should return to the

owner's hands as an ice cream manufactory. In view of such a situation, the clause of the lease in question was framed, that "all improvements or additions made by the lessee shall not be detached from the property, but shall remain for the benefit of the lessor." Though awkward and somewhat obscure, grammatically, the meaning of this clause is sufficiently plain, and the evident intention of the parties can be gathered therefrom.

The referee states the situation as follows:

"In fact all the items claimed by the trustee, which are 1 twin mixer, 4 freezers, 1 washer and sterilizer, all motors, shafting and belting, brine pump, german silver connections between mixer and freezers, are attached by bolts and nuts, as described, but though they can be removed without injury to the freehold as it stands, yet the building having been converted from a stable to a building especially adapted for the purpose of manufacturing ice cream, after the removal of the property claimed by the trustee, it would be unfit for either a stable or a residence, and would be manifestly in an unrentable condition."

Clearly the language of this clause could only be applied to property that was thus attached to it, and was therefore of a character to be "detached." No such language was necessary to prevent the tenant from taking out floors, beams, and structures which had been incorporated and made part of the building. One does not speak of such things as being either attached or detached. The word "detached" is the antithesis of "attached." The property forbidden to be detached by the lessee was necessarily property that had been attached. In this respect, the law of the contract differed from the common law as to trade fixtures. In order that the contention on behalf of the trustee be sustained, it would only have been necessary to have left this clause out entirely and the common law would have protected in favor of the owner all the permanent additions and improvements that went into the structure of the building itself and permitted the only articles to which the clause could apply to be removable by the lessee as trade fixtures.

We agree with the court below that the ratio decidendi of Isman v. Hanscom, supra, must be recognized as controlling in the present case, although, as this court says in the Montello Brick Co. Case, 167 Fed. 482, 484, 93 C. C. A. 118, 120:

"No general principles of law are involved. The case turns on the meaning of this particular lease."

The case of Lindsay Bros. v. Curtis Pub. Co., 236 Pa. 229, 84 Atl. 783, decided by the Supreme Court of Pennsylvania and not yet officially published, has been carefully examined and we find nothing therein to modify the opinion that we have already expressed. This case, too, stands upon its own peculiar facts and may be easily distinguished from the case of Isman v. Hanscom, as also from the present case. It therefore cannot be considered as a decision overruling or modifying the law as declared in the Isman Case.

The judgment of the court below is therefore affirmed.