## In re LEXINGTON MOTORS CO. OF NEW YORK, Inc.

### Appeal of 1767 BROADWAY CO., Inc.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

### No. 72.

1. **Fixtures ☞7—Method of annexation factor in determining character of chattel affixed.**

   A chattel affixed to realty retains its character as personalty or becomes a fixture according to the method of annexation and its adaptability to the use of the premises.

2. **Fixtures ☞1—Whether chattel may be removed without injury determining factor.**

   One of the determining factors in deciding whether a chattel affixed to realty retains its character as personalty is whether it may be removed without injuring or substantially destroying its own quality and value.

3. **Fixtures ☞17—Paneling installed by tenant held to pass to landlord subject to tenant's use.**

   Where tenant installed oak paneling covering the entire wall space to the height of 8 feet, removing the paneling would cause substantial injury to the walls, and it had none of the attributes of a trade fixture, *held*, that it passed to the landlord on its installation, subject to tenant's use, in view of a provision of the lease requiring tenant to secure landlord's written consent to any "alteration, change, or addition."

4. **Fixtures ☞15—At expiration of lease trade fixtures are tenant's property.**

   In the absence of a contrary intention, trade fixtures used by tenant are the property of the tenant at the expiration of the lease.

5. **Fixtures ☞15—Trade fixtures remain personalty as far as removal is concerned.**

   Trade fixtures of a tenant remain personal property in the eye of the law so far as the right of removal is concerned.

6. **Estoppel ☞77—Purchase of paneling held not to estop lessor from claiming it as fixture.**

   A purchase by lessor at receiver's sale of paneling installed by bankrupt lessee, stated to be without prejudice and merely to prevent its removal by irresponsible third parties, *held* not to estop lessor from claiming the paneling as fixtures.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Lexington Motors Company of New York, Inc., alleged bankrupt. The 1767 Broadway Company, Inc., petitioned for an order restraining the receiver from selling or otherwise disposing of oak paneling covering the wall space in premises former-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ly occupied by the alleged bankrupt. From an order denying the petition, petitioner appeals. Order reversed.

Trowbridge & Fox, of New York City, for appellant.

David W. Kahn, of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The Lexington Motors Company of New York, Inc., in July, 1921, took possession of a showroom owned by the petitioner at 1767 Broadway, New York City, under a lease for a term of years. It installed heavy oak paneling covering the wall space, columns, and piers in said premises. In thus installing the oak paneling, holes several inches deep were first drilled through the plaster and tile of the wall, several feet apart, and wooden plugs were inserted into these holes. There were several hundred of these plugs inserted in the walls and columns, and they penetrated through the plaster and tile to the brick construction. The oak panels were about eight feet high and from three-quarters of an inch to an inch and a quarter in thickness, and were attached to the walls and columns by means of nails hammered into the wooden plugs. Some sections of the paneling were fastened to the floors, instead of to the walls, by means of wooden plugs similarly inserted into the holes bored into the tile floor. The paneling covered the entire wall space and every column and pier to the height of about eight feet. Thus the paneling was very firmly affixed to the walls, and, if removed, would necessitate the extraction of hundreds of nails and plugs, resulting in the cracking of the plaster in hundreds of places and damaging the tile in many spots. It was estimated that, if such work was undertaken, the repairing and painting of the walls and columns, after such removal, would cost approximately $2,000. The lease in question contained the following paragraph:

"Fourth. The lessee will not make or suffer to be made any alterations, changes, or additions upon the premises without the consent of the lessor in writing, and if any such alterations, changes, or additions are made they shall be and become a part of said premises and the property of the lessor."

Thereafter a petition in bankruptcy was filed against the Lexington Motors Company of New York, Inc., and on the 4th of April, 1923, a receiver was appointed. The receiver advertised for sale, on the 30th of April, 1923, the assets and property belonging to the alleged bankrupt, including the oak paneling in question. Thereupon the petitioner moved for an injunction permanently enjoining the receiver from removing, selling, or in any wise disposing of the oak paneling, and asking for a temporary restraining order until the return day for the hearing of the motion. Prior to the hearing of the motion, the sale took place. The petitioner purchased at public auction all the right, title, and interest of the receiver to the oak paneling in question. The temporary restraining order granted merely enjoined and restrained the receiver from "removing the oak paneling affixed to the walls of the premises." After a hearing on May 4, 1923, the District Judge denied the prayer of the petitioner to enjoin the

receiver from removing, selling, or in any wise disposing of the oak paneling. The purchase by the petitioner at the auction sale was stated to be "without prejudice and merely to protect itself against the removal of the paneling by irresponsible third persons." The District Judge, in denying the motion restraining the receiver from selling, removing, or otherwise disposing of the oak paneling, placed it specifically upon the ground that the bankrupt retained an interest in the paneling which could be sold, and stated:

"That inasmuch as the landlord itself purchased such interest the questions of removal of the paneling and the injury that might be caused to the premises by such removal and the question of fulfillment on the part of the bankrupt lessee of its covenant to leave the premises in good condition did not arise."

[1-3] We think the application for the injunction should have been granted. A chattel affixed to the realty retains its character as personal property or becomes a fixture, according to the method of annexation to the realty and its adaptability to the use of the premises. One of the determining factors is whether or not it may be removed from the freehold without injuring or substantially destroying its own quality and value. This rule prevails in the decisions in New York state. McRea v. Central Nat. Bank, 66 N. Y. 489; Voorhees v. Mc-Ginnis, 48 N. Y. 278; Ford v. Cobb, 20 N. Y. 344. There is no dispute that the panels installed by the bankrupt covered the entire wall space, including the columns and piers in the leased premises, to the height of about eight feet. The method, manner, and substantiality of affixing them to the freehold meant very substantial destruction when the nails were drawn and the plugs were removed in order to remove the paneling. An estimate of the repairs after such removal indicates that substantial damage would result. Undoubtedly the tenant intended a real structural change to the premises as an improvement to the space it occupied. The paneling had none of the attributes of a trade fixture. Its installation was not a necessary adjunct to the business of the tenant, and the premises with the added paneling could be utilized with profit in another trade or business. The parties, in making the lease in question, by the terms of the fourth paragraph referred to herein, clearly indicated that they desired, when the lease ended, that the paneling pass to the landlord. "Alteration, change, or addition," within the meaning of that clause, embraces the paneling. It passed to the landlord upon its installation, subject to the use of the tenant.

[4, 5] Similar clauses in leases, where additions or alterations have been made of a less permanent character than that involved in the case at bar, have been held to pass to the landlord at the termination of the lease. Reber v. Conway, 203 Fed. 12, 121 C. C. A. 364; Levin v. Improved Property Holding Co., 141 App. Div. 106, 125 N. Y. Supp. 963; Excelsior Brewing Co. v. Smith, 125 App. Div. 668, 110 N. Y. Supp. 8. Trade fixtures used by a tenant, in the absence of some intention by the parties that they become the property of the landlord at the expiration of the lease, of course, are the property of the tenant, as in cases like Wiggins Ferry Co. v. O. & M. Ry. Co.,

142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1055, and In re Howard Laundry, 203 Fed. 445, 121 C. C. A. 555. In the Howard Laundry Co. Case, the determining factor was said to depend upon whether the various machines could be removed without substantial injury to the building, and that a clause similar to the one involved in the instant case was intended to apply to permanent additions to the building, and not to personal property which, for business purposes, was temporarily and detachably fastened to the floor or ceiling of the building. The question thus becomes in each case largely one of fact. The trade fixtures of a tenant remain personal property in the eye of the law so far as the right of removal is concerned. Matter of City of New York, 192 N. Y. 295, 84 N. E. 1105, 18 L. R. A. (N. S.) 423, 127 Am. St. Rep. 903.

[6] The fact that the appellant purchased the paneling to prevent its removal by irresponsible third parties, in the event that the motion was decided adversely to it, does not in any way estop it from asserting its right to title and ownership on this application. Indeed, it announced at the sale that it purchased without prejudice. We think the paneling in question, under the terms of the lease, was the property of the landlord, and that it in no way was an asset of the bankrupt estate.

Order reversed.