Parkway Auto Service, Inc., v. Wright

*Henry Arronson*, for plaintiff.

*J. Gowen Roper*, for defendant.

ALESSANDRONI, J., November 20, 1943.—This matter arises out of the expiration of a leasehold held by petitioner under a lease agreement executed by the lessee on August 9, 1933, and approved by the lessor on August 11, 1933, for the term of 10 years "beginning with the substantial completion of the construction by lessee of the service station" then to be erected on the demised premises. It is for the determination of the asserted right of removal of the service station from the demised premises, situate at the southeast corner of Broad and Oxford Streets, Philadelphia, that this petition for declaratory judgment was filed.

Prior to the execution of the lease and the erection of the service station building thereon, the improvements on the premises consisted of a 2½-story building, then vacant and partially vandalized. By the terms of the lease, petitioner, as lessee, was granted the right to demolish the existing structure and to erect:

". . . a building or buildings to be used as and for a gasoline and oil filling station and general automobile service station, together with driveways, tanks, pumps or other equipment as lessee may deem necessary and proper for use in said business, it being clearly understood by and between the parties hereto that all plans and specifications for such installation and buildings be first approved in writing by lessors before the contract for the erection and/or installation of which is let.

"As a condition precedent to this lease and as an essential part hereof, lessee agrees that the cost of

the construction hereinabove authorized shall be not less than Seventy-five hundred ($7500.00) Dollars, the cost thereof to be evidenced to lessors by receipts to the said amount paid in full."

The rental to be paid by lessee, based upon the gross gallonage sold, was 1⅛ cents per gallon.

The demolition of the existing building done, petitioner erected on the premises a service station of a type, in general contour and appearance, similar to its other stations. The improvements consisted of a one-story brick gasoline service station consisting of an automobile washroom with a grease and sand trap drain and three open lubrication rooms facing Oxford Street, and an office and lavatory room facing Broad Street. The office portion of the structure also houses a heating system. Petitioner installed various tanks, pumps, signs, and light standards necessary for the functioning of its business, which commenced on or about September 20, 1933.

On May 4, 1943, respondent, through his agent, served timely notice upon petitioner of intention to repossess the demised premises at the expiration of the term on September 30, 1943. Thereafter, on July 1, 1943, petitioner, asserting its right to remove the various items of property hereafter enumerated, and manifesting its intention so to do, tendered an option to the lessor to purchase the tanks, signboards, pumps, lights, electrical equipment, and the building. This offer was made in compliance with order M-68-C of the Office of Petroleum Coördinator for National Defense, part 1508, whereby, in advance of the removal of such equipment, the owner of premises such as here involved is vested with a right of purchase. Lessor thereupon signified his intention to purchase the building and denied the asserted right in petitioner to remove it at the expiration of the leasehold; the lessor acknowledged petitioner's right to remove certain

equipment, such as the tanks, signboards, pumps, light reflectors, and the like, and agreed to purchase them at the prices quoted in the option.

That a genuine controversy exists between the parties with regard to petitioner's asserted right to remove the building is clear. The differences between the parties under the lease agreement, the construction thereof, and a declaration of the respective rights of the parties are properly before the court in accordance with the Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, as amended.

### Discussion

The issue presented revolves upon the lease agreement entered into between the parties, and the contradictions, relevant to the issue presented, as contained in the printed and typewritten portions thereof. Passing over matters presently immaterial, the following provisions appear in the printed portions of the lease:

Section 7(d). A covenant prohibiting the erection, placing, or painting of signs without the written consent of the lessor and an obligation to remove signs and restore walls at the expiration of the lease.

Section 7(e). A covenant prohibiting alterations, improvements, or additions to the demised premises. The same clause provides that "all alterations, improvements or additions shall remain upon the premises at the expiration or sooner determination of this lease and become the property of lessor, unless lessor shall, prior to the determination of this lease, have given 60 days' written notice to lessee to remove the same, in which event lessee will remove alterations, improvements and additions and restore the premises to the same good order and condition in which they are now. If lessee fails to do so, lessor may do so, collecting the cost and expense thereof as additional rent".

Section 8(*b*). An affirmative covenant to keep the premises clean, repair all damages to the plumbing, replace glass windows, "and maintain every part and portion of the demised premises, including the exterior and interior, in the same good order and repair as they now are, reasonable wear and tear and damage by accidental fire or other casualty not occurring through negligence of lessee or those employed by or acting for lessee alone excepted".

Section 11. A clause providing for the abatement of rent if the premises are destroyed by fire and affirmatively stating that: "If the damage caused as above be only partial and such that the premises can be restored to their present condition within a period of 60 days, the lessor agrees to immediately restore the same, reserving the right to enter upon the demised premises for that purpose. The lessor also reserves the right to enter upon the demised premises whenever necessary to repair damage caused by fire or other casualty to the building of which the demised premises are a part, even though the effect of such entry be to render the demised premises or a part thereof untenable".

Section 12(*d*). "Make repairs. In the event of the failure of lessee to make repairs promptly, as hereinafter agreed, lessor may go upon the demised premises and make such repairs at the expense of the lessee, the cost thereof to be charged to lessee as additional and delinquent rent."

Added to the lease, as a typewritten portion thereof, is the clause previously referred to whereby the lessee is empowered to demolish the existing structure and to erect thereon:

". . . a building or buildings to be used as and for a gasoline and oil filling station and general automobile service station, together with driveways, tanks, pumps or other equipment as lessee may deem necessary and proper for use in said business, it being

clearly understood by and between the parties thereto that all plans and specifications for such installation and buildings be first approved in writing by lessors before the contract for the erection and/or installation of which is let.

"As a condition precedent to this lease and as an essential part hereof, lessee agrees that the cost of construction hereinabove authorized shall be not less than seventy-five hundred ($7500) dollars, the cost thereof to be evidenced to lessors by receipts to the said amount paid in full.

"Anything herein contained to the contrary notwithstanding, it is agreed and understood by and between the parties hereto that lessors shall have the right, privilege and option of terminating this lease, rendering the same null and void, together with all the rights, privileges, obligations, responsibilities and liabilities hereunder assumed severally by the said parties, to be effective only in the event of a bona fide sale of the said premises, upon four months prior written notice from lessors to lessee, at any time after the expiration of the first year of the term hereof. At the time of peaceable delivery by lessee to lessor of the said demised premises as specified in such lease determination notice, lessor agrees to pay to lessee the sum of seventy-five hundred ($7,500) dollars, if done during the second year of the term hereof, sixty-seven hundred fifty $6,750) dollars during the third year of the said term, six thousand ($6,000) dollars if during the fourth year of the said term, fifty-two hundred fifty ($5,250) dollars if during the fifth year of the said term, forty-five hundred ($4,500) dollars if during the sixth year of the said term, thirty-seven hundred fifty ($3,750) dollars if during the seventh year of the said term, three thousand ($3,000) dollars if during the eighth year of the said term, twenty-two hundred fifty ($2,250) dollars if during the ninth year of the said

term, and fifteen hundred ($1,500) dollars if during the tenth year of the said term, provided that no such indemnification of any amount is to be paid for delivery of possession at the expiration of the term hereof or sooner determination of the same for violation of covenant."

As a part of the same rider, there is a provision requiring the lessee to insure "the building and installations to be erected by lessee, such insurance to be in sufficient amount to guarantee their reconstruction in event of total demolition or destruction by fire. . . ."

The prohibition against the erection, painting, and placing of signs, contained in section 7(d) of the printed portion of the lease, is negatived by a typewritten clause granting such right to the lessee.

Finally, and presenting the crux of the controversy, is the typewritten clause:

"Lessor hereby grants the right of lessee, if, as and when lessee may receive notice from lessor to vacate the said premises, to remove from the herein demised premises all equipment, tanks, machinery, light standards, pumps, billboard signs and such other installations as may have been made by lessee hereunder."

The asserted right of the lessee to remove the entire structure, including the building "brick by brick", is founded on the contention that in its entirety the improvement made at the inception of the lease is a trade fixture, was used solely for the trade purposes of the lessee and the right of its removal upon the notice to vacate is expressly included in the clause which provides ". . . the right . . . to remove . . . all equipment, tanks, machinery, light standards, pipes, billboard signs and such other installations as may have been made by lessee hereunder".

Petitioner's claim, however, is founded more in the general principles of law relating to trade fixtures than in the lease agreement. With the propositions of

law so presented we cannot quarrel. Whether the conclusion be reached on the theory that the property in question is personalty and hence removable, or removable *because* of the class of property generally described as a "trade fixture", and whether such doctrine of trade fixtures be asserted independently or coupled with a "presumption of intention", is immaterial; it is clear that out of the public policy to encourage "the improvements of the county" the law favors the removal of fixtures erected in furtherance of trade: White v. Arndt, 1 Wharton 91 (1836). These generalizations, however, are at all times subject to the primary law of contracts and become meaningless in the face of an expression of intention by the parties: Isman v. Hanscom, 217 Pa. 133 (1907); In re Bahl's Ice Cream & Baking Co., 195 Fed. 986, affirmed sub nom. Reber v. Conway, 203 Fed. 12 (1913). Where the parties have spoken on the subject, the public policy, articulated in varying forms, finds effect only in the further direction that in the construction of such agreements words of doubtful meaning are to be construed in favor of the tenant: Lindsay Brothers, Inc., v. Curtis Publishing Co., 236 Pa. 229 (1912); In re Mount Holly Paper Co., 110 F. (2d) 220 (1940).

So regarded, the imputation of a want of intention to convert or the application of any presumption in favor of the right of removal of chattels annexed by the tenant becomes meaningless. Had the lease been silent on the subject, we would unhesitatingly conclude that the structure in question constitutes a "trade fixture" and the generalizations referred to above would have attached to fix a right in petitioner to remove the property. But the parties have spoken and have made for themselves the law of the case. In the detail there may be ambiguity, but in the manifestation of a broad intention we recognize no cloud.

Prior to the erection of the service station there was a 2½-story building on the demised premises. Petitioner was granted the right to demolish that structure and erect a service station, limited and controlled however, and incorporated as a "condition precedent" in the lease, by the lessor's requirement that the cost of the structure to be erected shall be not less than $7,500, and that "all plans and specifications for such installation and building be first approved in writing". Such a requirement is hardly consonant with an absolute retention of title to the "installation and building" in the petitioner. Coupled, as the erection of the structure is, with demolition of an existing structure, there can be no merit in the assertion that to permit the lessor to retain the improvements will constitute an unjust enrichment or that to permit the removal thereof would not "reduce the value or affect the use of the land as it stood at the date of this lease": Copley v. Stewart, etc., et al., 14 D. & C. 733 (1930). Indeed, petitioner's assertion that the "trade purposes [dispensing gasoline and oil] . . . could be accomplished without the building" points the weakness of the right of removal contended for when we endeavor to give meaning to the "condition precedent" agreed upon by the parties.

The incorporation of the "condition precedent", regarding the lease agreement as an entirety, is obviously part of an entire plan or agreement with regard to the ownership or right of removal of the structure. The lease contained a "recapture clause" in the event of sale by the lessor at any time after expiration of the first year of the term. Upon such event, the parties arranged a sliding scale of payment by lessor to petitioner upon the event of such recapture, commencing with $7,500 during the second year of the term and diminishing to $1,500 if possession be delivered during the tenth year of the term. The significance of this provision, apropos the present dispute, is clear. As-

suming, arguendo, that during the second year of the lease the lessor had terminated the lease upon the consummation of a bona fide sale, petitioner would have been entitled to payment of the sum of $7,500 at the time of peaceable delivery of the premises. To put the question whether, in addition to such payment, petitioner would have been entitled to the removal of the "installation and building", erected by it pursuant to the lease at a cost of "not less than $7500", is to answer it. Obviously the cost of the erection by petitioner was part of the rental reserved by the lessor; as the term of the lease progressed that portion of the rental represented by the cost of the improvements was to be amortized so that in the event of an earlier determination of the lease petitioner would be reimbursed for the rental advances made thereby. Such a conclusion is the only logical one from the conditions established in the lease that the lessor approve the plans and specifications of the improvements to be erected, that such improvements should cost not less than $7,500 and that, in the event of termination of the lease, petitioner should be paid a diminishing sum commencing with $7,500.

Such a conclusion, which denies the right of removal here asserted, is fortified by other uncontradicted and unambiguous provisions of the lease. Thus, the covenant of petitioner to maintain the premises in repair (clause 8(b)), the abatement of rent in the event of fire and the obligation of the lessor to restore the premises in the event of fire (clause 11), and the right of the lessor to make repairs in the event of the failure of petitioner so to do (clause 12(d)), are consistent only with the ownership and right of possession of the improvement in the lessor at the expiration of the lease. And, if it be argued that such clauses appear only in the printed portion of the lease and are negatived by the subsequent typewritten portions thereof (Moore v. Lichtenberger, 26 Pa. Superior Ct. 268; Grandin v.

Rochester German Ins. Co., 107 Pa. 26), the position of petitioner in the present dispute is hardly aided by the typewritten agreement by it to insure "the building and installations to be erected by lessee, such insurance to be in sufficient amount to guarantee their reconstruction in event of total demolition or destruction by fire . . ."

Despite such clear indications of the agreement by the parties that the building was to remain the property of the lessor at the termination of the lease, petitioner asserts that the clause providing that "Lessor hereby grants the right of lessee, if, as and when lessee may receive notice from lessor to vacate the said premises, to remove from the herein demised premises all equipment, tanks, machinery, light standards, pumps, billboard signs and such other installations as may have been made by lessee hereunder" confers upon it the right to remove the building. With this we cannot agree. First, because it does violence to the obvious agreement and intention of the parties as expressed throughout the lease agreement. Secondly, because a definition of the phrase "such other installations" as referring to a building of substantial size and firmly annexed to the real estate, when the clause follows an enumeration of "equipment, tanks, machinery, light standards, pumps, billboard signs", is to do violence to the usage of language. From the context of this paragraph it is obvious that what was intended by the words "such other installations" was items of equipment or appointment only; not so fundamental a matter as a building or structure of the size and physical character of the one in controversy.

Rejecting as we do petitioner's asserted right to the removal of the building, we are however of the opinion that, in accord with the principle enunciated in the cases of Lindsay Brothers v. Curtis Publishing Co. and in In re Mount Holly Paper Co., supra, in determining

which items of equipment are removable by petitioner under the grant last quoted, all doubts should be resolved in favor of petitioner. We, therefore, make the following

*Findings of fact*

1. Plaintiff is a Pennsylvania corporation, engaged in the business of marketing, selling, and distributing, through gasoline filling and automobile service stations, gasoline, oils, lubricants, automobile accessories, and other products.

2. Defendant is the owner of premises described as southeast corner Broad and Oxford Streets, Philadelphia, having a frontage on Broad Street of 48 feet, and on Oxford Street of 113 feet, more or less.

3. On August 9, 1933, Lionel Friedmann, Inc., agent for defendant, and defendant's wife, entered into a written lease agreement (prepared by Lionel Friedmann, Inc., on behalf of defendant lessor), wherein and whereby there were let and demised, to plaintiff premises southeast corner Broad and Oxford Streets, Philadelphia, for the term of 10 years, commencing with the substantial completion of the construction, by plaintiff, of a service station contemplated under the terms of said lease, and ending on the last day of the tenth lease year thereafter, for the rental of one and one eighth (1⅛¢) cents per gallon for each gallon of gasoline sold on the demised premises.

4. The lease executed August 9, 1933, contained the following clauses:

"All alterations, improvements or additions shall remain upon the premises at the expiration or sooner determination of this lease and become the property of lessor, unless lessor shall, prior to the determination of this lease, have given 60 days written notice to lessee to remove the same, in which event lessee will remove such alterations, improvements and additions and re-

store the premises to the same good order and condition in which they now are."

"As a condition precedent to this lease and as an essential part hereof, lessee agrees that the cost of construction as hereinabove authorized shall be not less than seventy-five hundred ($7,500) dollars, the cost thereof to be evidenced to lessors by receipts to the said amount paid in full. . . .

"Anything herein contained to the contrary notwithstanding, it is agreed and understood by and between the parties hereto that lessors shall have the right, privilege and option of terminating this lease, rendering the same null and void, together with all the rights, privileges, obligations, responsibilities and liabilities hereunder assumed severally by the said parties, to be effective only in the event of a bonafide sale of the said premises, upon four months prior written notice from lessors to lessee, at any time after the expiration of the first year of the term hereof. At the time of peaceable delivery by lessee to lessor of the said demised premises as specified in such lease determination notice, lessor agrees to pay to lessee the sum of seventy-five hundred ($7,500) dollars, if done during the second year of the term hereof, sixty-seven hundred fifty ($6,-750.) dollars if during the third year of the said term, six thousand ($6,000.) dollars if during the fourth year of the said term, fifty-two hundred fifty ($5,250.) dollars if during the fifth year of the said term, forty-five hundred ($4,500.) dollars if during the sixth year of the said term, thirty-seven hundred fifty ($3,750.) dollars if during the seventh year of the said term, three thousand ($3,000.) dollars if during the eighth year of the said term, twenty-two hundred fifty ($2,-250.) dollars if during the ninth year of the said term, and fifteen hundred ($1,500.) dollars if during the tenth year of the said term, provided that no such indemnification of any amount is to be paid for delivery

of possession at the expiration of the term hereof or sooner determination of the same for violation of covenant.

"It is expressly understood and agreed by and between the parties hereto that this lease and the riders attached hereto and forming part hereof set forth all the promises, agreements, conditions and understandings between lessor or his agent and lessee relative to the demised premises, and that there are no other promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth. It is further understood and agreed that, except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this lease shall be binding upon lessor or lessee unless reduced to writing and signed by them."

5. The structure which was upon the demised premises at the date of the lease, viz, August 9, 1933, was a 2½-story residence which was vacant at the said time and was dilapidated in the rear buildings.

6. At a cost in excess of $7,500, plaintiff erected and installed on the demised premises a filling station building such as was in common use by it, and was similar in construction, design, and appearance to other stations operated by plaintiff in the City of Philadelphia, and was different in design and appearance from the design and appearance of service stations operated by other major gasoline-dispensing companies in the City of Philadelphia. Said structure was particularly and peculiarly adapted as a gasoline filling station and was erected for the purpose of being used by plaintiff in carrying on its business of a filling and service station on premises southeast corner Broad and Oxford Streets, Philadelphia.

7. The filling station erected and installed by plaintiff is a one-story brick gasoline service station building, as follows:

(*a*) The foundations are approximately 24 inches in depth and 16 inches in thickness. The east wall of the building is 28 feet; the south wall approximately 37 feet, and the north wall approximately 27 feet. The walls of the exterior are concrete stucco over brick.

(*b*) The building in question houses two lavatories, an office, display room, and three lubrication pits.

8. In addition to the filling station structure, plaintiff installed five tanks, approximately ten feet in depth from the surface of the ground; various gasoline-dispensing pumps; signs; light standards, and other appliances and equipment, together with pipes and electrical wiring and connections.

9. Approximately two years after the original construction in September of 1933, plaintiff, at its own expense, installed four removable sliding, overhead doors in front of that portion of the building which houses the lubrication pits, and an Arco heater to which there were attached pipes and radiators.

10. Plaintiff has in all respects performed its duties under said lease, and has at all times complied with all the terms, conditions, covenants and stipulations therein contained on its part to be kept, performed, and observed.

11. On or about May 4, 1943, Lionel Friedmann & Co., agents for defendant, forwarded to plaintiff and plaintiff received a notice, of which the following is a true and correct copy:

"May 4, 1943

Parkway Auto Service, Inc.
31st and Grays Ferry Avenue
Philadelphia, Pa.

Being in possession of certain premises, with the appurtenances, situate southeast corner of Broad and Oxford Streets, having a frontage on Broad Street of forty-eight (48′) feet, more or less, and on Oxford Street of one hundred thirteen (113′) feet, more or

less, which you now hold as tenant under lease agreement dated August 9, 1933.

We hereby give you notice, that it is our desire to have again and repossess the same, at the expiration of your current term, to wit, on the 21st day of September, 1943.

Will you kindly acknowledge receipt of this notice.

> Lionel Friedmann & Co.,
> Successors to:
> Lionel Friedmann, Inc., Agent."

12. The building is attached to the freehold and can be removed only by completely demolishing it and tearing it down brick by brick.

15. Under conservation order no. M-68-C, recommendation no. 30, issued January 29, 1942, by the Office of the Petroleum Coördinator for the National Defense of the United States, plaintiff lessee was obliged to afford defendant an opportunity to purchase all equipment and installations placed on the demised premises by the lessee. Pursuant to said recommendation and order, plaintiff forwarded to Lionel Friedmann, Inc., agent for defendant, duly authorized to act for and on behalf of defendant, a letter, of which the following is the relevant portion:

". . . Pursuant to the terms and provision of Conservation Order M-68-C of the Office of Petroleum Coordinator for National Defense, part 1508, we desire to give you thirty days' option from the date hereof to purchase all or any of the items hereinafter set forth at a reasonable price. We submit for your immediate consideration the following figures:

| | |
|---|---|
| 1  550 Gal. U. G. Tank............. | $50.00 |
| 3  1080 Gal. U. G. Tanks @ $75.00..... | 225.00 |
| 1  17 x 30 signboard ............... | |
| 1  10 x 21  signboard ............... | 227.00 |
| 4  Erie Computing Pumps (installed July 23, 1941) ................ | 623.96 |

| | |
|---|---|
| 1 Mushroom light .................. | 24.70 |
| 3 Keystone Reflectors .............. | 32.40 |
| Special installation costs of electrical equipment, piping, etc. .......... | 500.00 |
| Building ........................ | 7,500.00 |

"Unless you notify us in writing within thirty days from the date hereof of your intention to exercise the option to purchase the items aforesaid and of your intention to complete said purchase within a reasonable time thereafter, we will, shortly after September 1, 1943, take the necessary steps to remove the aforesaid fixtures, building, equipment, etc."

14. Defendant's counsel, on August 11, 1943, threatened, on defendant's behalf, to prevent plaintiff's removal of said filling and service station, which plaintiff proposed to remove at the termination of said lease, September 21, 1943.

15. It was the intention of plaintiff and defendant, at the time of the execution of the lease, that the building and structure to be erected on the demised premises was to remain as the property of defendant at the termination of the lease.

16. It was the intention of plaintiff, at the time it installed the Arco Heating System in the gasoline filling station, and the four overhanging sliding doors, that they were not to become a part of the freehold but were to be and remain the personal property of plaintiff lessee, with the right on its part to remove the same at the termination of said lease.

17. Defendant has exercised the option extended to it by plaintiff, pursuant to the aforesaid conservation order no. M-68-C, by undertaking to purchase the tanks, pumps, and light reflectors, but refuses to purchase the filling station structure placed on the demised premises by plaintiff.

*Conclusions of law*

1. The intention of the parties to a written lease must be ascertained from its terms, particularly when such lease sets forth that all of the agreements, conditions, and understandings are contained in the lease.

2. The right of a tenant to remove a structure at the termination of a lease is primarily dependent upon the construction of an agreement giving or prohibiting such a right.

3. The fact that a building might be held to be a trade or tenant fixture does not govern the rights of the parties to its removal at the termination of a lease where they have entered into an agreement covering such rights.

4. A trade fixture may mean and include any building, whether wood, stone, or brick, of any size or form; as well as engines, boilers, machinery, or similar fixtures necessary for the lessee's business.

5. With respect to buildings erected by a tenant for the purposes of his trade or business on the demised premises, the rules are most favorable to the tenant. The presumption is in favor of the tenant's right to remove buildings which he has placed on the demised premises for his own purposes. There is an implied intention flowing from the nature and character of the act and the clear purpose to be served by the construction, that the fixtures and buildings placed on the demised premises by a tenant for the purposes of his business or trade thereon, in the absence of an express contract relating to their removal, are to be removed by the tenant before the end of the term.

6. Any presumption in favor of the removal of trade or tenant fixtures may be rebutted by the express agreement of the parties.

7. The ordinary use and meaning of the word "installation" is to define something placed in or added to

a finished structure and it is not ordinarily used as a synonym for the structure or building.

8. The phrase "such other installations" was not meant to include the building or structure.

9. The clause in the typed rider to the lease providing a schedule of payments to the lessee in the event of a sale of the building during the term of the lease indicates an intention on the part of the lessor to write off or amortize the cost of the building during the 10-year term.

10. The filling station building, as well as the lubrication pits constructed in the building, become the property of defendant at the termination of the lease and plaintiff has no right to remove or interfere with the same.

11. Plaintiff lessee has the right to remove the four overhanging sliding doors in front of the lubrication pits.

12. Plaintiff lessee has the right to remove the Arco Heating System together with the pipes and radiators thereto attached, installed in the filling station building.

*Decree*

And now, November 20, 1943, it is ordered, adjudged, and decreed:

1. That the gasoline filling station building in question, including the lubrication pits erected by plaintiff lessee upon the demised premises southeast corner Broad and Oxford Streets, Philadelphia, is the property of defendant upon the termination of the lease and that plaintiff lessee has no right, title, or interest to the said building or structure.

2. That the four overhanging doors in front of the lubrication pits and the Arco Heating System in said filling station building together with the pipes and radiators thereto attached are the property of plain-

tiff lessee upon the termination of the lease, and may be removed therefrom.

3. Costs to be divided equally between the parties.